John A. MASIELLO, Jr.

v.

**John J. NORTON, Warden, Federal Correctional Institution, Danbury, Connecticut and United States Board of Parole.**

Civ. No. B–748.

United States District Court,
D. Connecticut.

Oct. 12, 1973.

Hubert J. Santos, Public Defender, Hartford, Conn., for plaintiff.

Stewart Jones, U. S. Atty., Barry J. Cutler, Asst. U. S. Atty., New Haven, Conn., for defendants.

# 1134

## MEMORANDUM OF DECISION

ZAMPANO, District Judge.

The petitioner, John A. Masiello, Jr., presently incarcerated in the Federal Correctional Institution at Danbury, Connecticut, seeks habeas relief, alleging that the Board of Parole violated his constitutional and statutory rights when it denied him parole. Since facially the petition raised substantial issues which might warrant judicial intervention, the Court appointed Attorney Hubert J. Santos to represent Masiello, and an evidentiary hearing was held.

### I.

On March 4, 1970, Masiello and his father were convicted in the District Court for the Southern District of New York before Judge Morris E. Lasker and a jury, of conspiracy and bribery of public officials, in violation of 18 U.S.C. §§ 371 and 201(b). Judge Lasker sentenced Masiello to four concurrent terms of three years imprisonment. The convictions were affirmed on appeal in United States v. Masiello, 445 F.2d 1324 (2 Cir. 1971) (per curiam).

On February 4, 1972, on a plea of guilty, Masiello was sentenced by Judge Sylvester J. Ryan to a term of three years for a violation of the Selective Service Law, the sentence to run concurrently with those imposed in the bribery-conspiracy convictions. Thereafter, on June 23, 1972, he received a sentence of one year in the County Court for the County of Westchester, New York on a plea of guilty to a perjury violation. The state sentence was ordered to run concurrently with the federal sentences. He commenced service of his sentences on February 14, 1972, and, with good time allowance, his mandatory release date is scheduled for June 6, 1974.

On January 22, 1973, Masiello had a parole hearing at Danbury. The following day he was notified that his case had been referred for an *en banc* consideration by the Board of Parole and, a month later, that his parole was denied. He challenges the decision of the Board of Parole on three grounds: 1) the parole hearing was conducted in an unfair and discriminatory manner; 2) the referral of his case for an *en banc* review was arbitrary and capricious; and 3) the failure to provide reasons for the denial of parole was inconsistent with the Board's own regulations.

### II.

Masiello's parole hearing was conducted pursuant to the so-called "Pilot Project", an experimental program instituted in October, 1972 at five Northeast prisons, including the Danbury Correctional Institution. The pilot project was adopted "to implement a parole system that is more responsive to the public it serves" and to explore "new approaches to the parole process." United States Bureau of Prisons, Operations Memorandum 40100.14. Among other benefits, an inmate receives a personal hearing before two examiners, his caseworker may be present, representation by a non-lawyer is permitted, and he is entitled to a prompt decision with reasons given if parole is denied. In addition, there are provisions for a "review-appeal" in the event parole is not granted.

In attendance at Masiello's parole hearing were two examiners, a caseworker, Masiello, and Mrs. Masiello. The Court has carefully reviewed the 17-page transcript of the hearing and finds no merit to Masiello's claim that questions concerning his father infected the proceedings with bias and prejudice. The hearing commenced with Masiello presenting his version of the offenses, after which he was questioned about his presidency of the family corporation which was involved in the bribery offense, his financial status, his prior record, his job opportunities if released on parole, his work assignments at prison, and his association, if any, with organized crime figures. All these inquiries were clearly relevant in order to determine whether Masiello had made a satisfactory adjustment, and, if released, would avoid further violation of law.

While it is true that the examiners did question Masiello closely concerning his business relationship with his father, it must be recognized that the senior Masiello was a co-defendant with his son in a serious federal offense, and bears the reputation of being a key figure in organized crime. It seems perfectly natural that the examiners would delve into Masiello's past and possible future association with his father and others who might, upon his release on parole, adversely affect his motivation for law-abiding behavior. This is not to say, of course, that the "sins of the father" should fall upon the son. As set forth hereinafter, there must be a scrupulous attempt after due inquiry by the Board to delineate between malefactors so that one is not unduly punished because of the criminal activity and questionable reputation of the other.

### III.

Masiello next contends that he was denied procedural due process when the Board summarily declared him to be an organized crime figure and referred his case for an *en banc* consideration. He argues that the Board's standards for determining whether a prisoner ought to be named a member of organized crime are vaguely defined and that elemental fairness requires that he be given the opportunity to rebut an "o/c" label. It is uncontroverted that the classification results in additional restrictions in the prison and adversely affects the chances for early parole. The government, on the other hand, claims that the Court lacks the power to reexamine the decision of the Board and that, in any event, there is a factual basis in the record to support Masiello's special designation.

Under the Board's regulations, a prisoner's request for parole is reserved for an *en banc* examination by the Board of eight members if his conviction comes within one of the following five categories: 1) national security; 2) organized crime; 3) national or unusual interest; 4) major violence; or 5) long-term sentences. In the instant case, it is conceded by the government that Masiello's case was referred for an *en banc* review because of "his possible connection with organized crime elements, including his father." The relevant section of the Board's rules reads as follows:

> *Organized crime.* Included may be those prisoners who, in the Board's judgment, were *key* figures in organized criminal activities. Persons in this category are those who were professional criminals on a regular basis and who may have played a significant role in their organizations. Excluded are those who were involved only in an incidental way or who were convicted as lesser figures in a larger conspiracy or in a many faceted offense. (emphasis original). Rules of the United States Board of Parole, p. 22 (1971).

The phrase "organized crime figure" may, unless carefully defined, be misconstrued and misapplied. It may be interpreted to include, as the government's position suggests, any member of a joint venture who engages in a criminal activity involving *some* systematic planning and united effort. Under this definition almost every prisoner who participated in a crime with another could properly have his prison file jacket inscribed with an "o/c" label. The Court cannot conceive that this was the intent of the Board's enactment. Rather, in the Court's opinion, the clear import of the language of the regulation is that a prisoner may be classified as a member of organized crime if the officials of the Parole Board have a reasonable basis in fact to conclude that the inmate was a prominent figure in a structured criminal syndicate composed of professional criminals who primarily rely on unlawful activity as a way of life.

In arriving at such a determination, many factors may weigh in the balance: the type and seriousness of the crime for which the prisoner was convicted and incarcerated, the presentence report, information submitted by law enforcement officers, parole recommendation comments of the sentencing judge

and the United States Attorney, disclosures of reliable informers, reports of undercover agents, admissions or confessions of the inmate himself or members of his criminal organization, and so forth. The Board possesses the experience and expertise for ascertaining which element or combination of elements is determinative, and a court ordinarily should not interfere with its considered judgment · under 18 U.S.C. § 4203. Scarpa v. U. S. Board of Parole, 477 F.2d 278 (5 Cir. 1973); Earnest v. Moseley, 426 F.2d 466 (10 Cir. 1970); Hyser v. Reed, 115 U.S.App.D.C. 254, 318 F.2d 225 (*en banc*), cert. denied sub nom. Jamison v. Chappell, 375 U.S. 957, 84 S.Ct. 447, 11 L.Ed.2d 316 (1963); cf. United States ex rel. Sperling v. Fitzpatrick, 426 F.2d 1161 (2 Cir. 1970).

■ However, the Board's broad discretionary powers do have perimeters and, in the unusual circumstance when evidence is presented that it acted arbitrarily or in violation of the regulations it promulgated, a court may intervene and review the actions of the Board in the parole process. See, e. g., United States ex rel. Buono v. Kenton, 287 F.2d 534 (2 Cir. 1961); Sobell v. Reed, 327 F.Supp. 1294 (S.D.N.Y.1971); Palermo v. Rockefeller, 323 F.Supp. 478 (S.D.N. Y.1971); United States ex rel. Hitchcock v. Kenton, 256 F.Supp. 296 (D. Conn.1966); cf. Scarpa v. U. S. Board of Parole, supra.

In the case at bar, the government has stipulated that Masiello received an "organized crime" designation solely on the basis of the allegations contained in his presentence report. Although neither Masiello nor his attorney had inspected the report, they agreed the Court could review it *in camera*. The report contains the usual factual background which is of aid to a sentencing court but, in addition, it is replete with hearsay, inferences, and conclusions con-

cerning alleged· connections between the Masiello family and organized crime. While the Court recognizes the desirability and need for confidentiality of sources in many instances so that an accurate overall profile may be presented to a sentencing court and thereafter to the Parole Board, it must also be emphasized that great prejudice may result from an inability of a defendant-prisoner to counter "one-sided and potentially devastating disclosures of asserted bad conduct." United States v. Rosner, 485 F.2d 1213 at 1231 (2 Cir. 1973). Cf. United States v. Brown, 470 F.2d 285 (2 Cir. 1972); United States v. Holder, 412 F.2d 212 (2 Cir. 1969); United States v. Fischer, 381 F.2d 509 (2 Cir. 1967).

The presentence report discloses no identifiable sources for the many adverse accusations contained therein, nor does it even classify them as "reliable." Moreover, the report at no place states Masiello *was* a member of organized crime but only that the probation officer "believes" that Masiello will "eventually become a member of the Cosa Nostra" because of his father's "corrupt and criminal ways." Judge Lasker's rather lenient sentence in view of the maximum exposure, and his letters in Masiello's behalf,[1] indicate he carefully differentiated between the factual statements and the multiple hearsay in the report.

■■ Yet, it is equally as clear that the examiners and the Board failed to winnow the wheat from the chaff. They apparently accepted at face value some loosely-worded, unsupported assertions in the report and, in haste, determined that Masiello was a key figure in organized illegal activities. It seems obvious on the present record that there was no basis in fact for the Board to conclude, as its own regulations require, that Masiello was a professional criminal who played a significant role in a criminal organization. Thus, it is evident that the parole officials did not read and as-

---

1. Judge Lasker wrote to the Board of Parole on January 5, 1973, urging that Masiello be granted "appropriate consideration" and "some relief"; and on August 3, 1973, the distinguished jurist supported Masiello's application to be transferred to a Half Way House.

sess accurately the contents of the presentence report, and, as a consequence, Masiello was classified with an "o/c" label without just cause. Under these circumstances, Masiello must be given another parole hearing to contest the "organized crime" identification.

 The Court's conclusion that Masiello's parole hearing was not consistent with due process does not, on remand, require a "trial-type" supplemental proceeding. But he should be alerted to the fact that his prison file jacket carries an "organized crime" designation, be informed that in all likelihood his case will be referred for an *en banc* consideration, and be afforded an opportunity, consistent with the prevailing parole hearing procedures, to answer and present countervailing arguments so that the examiners and the Board will have a complete record upon which to base a reasoned judgment.

### IV.

Masiello next asserts that the Board's failure to provide him with reasons for the denial of parole in February, 1973 violated the provisions of Operations Memorandum 40100.14 which established the "Pilot Project," and his Notice of Parole Hearing which specifically stated, "If parole is denied, the reasons for the denial will be given." The claim appears to have merit.[2] However, in March, 1973 the Board amended its rules to exclude *en banc* cases from the pilot project. Since Masiello's case on remand will be referred for a parole hearing under the Board's current regulations, the issue is now academic.

### V.

Accordingly, it is Ordered:

That the petitioner, John A. Masiello, Jr., be granted a new parole hearing,

consistent with this opinion, at the next session of the Board to be held at the Federal Correctional Institution at Danbury, Connecticut.

2. The government contends that *en banc* proceedings were specifically exempted from the requirements of the pilot project. A close reading of Operations Memorandum 40100.14 fails to support the government's position. The Memorandum merely excludes *en banc* hearing proceedings from the "review-appellate" procedures; the exclusion does not

cover the other requirements of the pilot project experiment, all of which were conformed with in this case except for the "reasons for the decision" provision. Moreover, the Court views the change in the rules in March, 1973 as an amendment and not a clarification of the Operations Memorandum of October, 1972.