Raymond MARQUEZ, Petitioner,

v.

WARDEN, FEDERAL CORRECTIONAL INSTITUTION, et al., Respondents.

No. 74 Civ. 4493 (JMC).

United States District Court,
S. D. New York.

Dec. 30, 1974.

Goldberger, Feldman & Breitbart, New York City (J. Jeffrey Weisenfeld, New York City, of counsel), for petitioner.

Paul J. Curran, U. S. Atty., S. D. N. Y. (Jerry L. Siegel, Asst. U. S. Atty., of counsel), for respondents.

## MEMORANDUM DECISION

CANNELLA, District Judge:

Petitioner, Raymond Marquez (presently incarcerated at the West Street Detention Center) brings this petition seeking relief in the nature of habeas corpus under 28 U.S.C. § 2241, mandamus pursuant to 28 U.S.C. § 1361, or alternatively under the All Writs Act 28 U.S.C. § 1651, challenging a decision of the Bureau of Prisons denying his request for a furlough and/or Community Treatment Center (CTC) placement.

For the reasons set forth below, the Court finds the decision of the Bureau of Prisons to be in full compliance with the relevant statutory guidelines, to have no constitutional infirmities and to be rationally based in fact.

The present proceeding arose when Marquez, who has served sixty months of a maximum eight year term under two separate convictions for violations of federal interstate gambling and racketeering statutes, applied in August of 1974 for a furlough to visit his wife. (Marquez had previously been granted parole effective September 26, 1974.) On September 6, 1974 the officials at West Street denied Marquez' request stating that "[a]n outstanding fine, special offender status, a detainer and close custody are the primary reasons for our decision."

In October Marquez commenced the instant proceeding, and, thereafter, a hearing was held before the Court on November 21 and 22, 1974. At the conclusion thereof, the Court, with the consent of both parties, entered an order remanding the matter to the Bureau of Prisons for further consideration and the exhaustion of administrative remedies. The order further provided that petitioner's special offender status not be considered by the Bureau in reaching its disposition. See Catalano v. United States, 383 F.Supp. 346 (D.Conn.1974).

Prior to the entry of the above order Marquez became eligible for parole but chose to decline it and to remain in prison until January 23, 1975, his mandatory release date. Having so decided, Marquez on November 22, 1974, and in anticipation of our order, submitted a new inmate request for a furlough and/or CTC so that he "could spend the holiday season with my family. Not having been with my family as an active husband and father, I feel that it would be difficult for me to resume this role after so long a period of time and a furlough (a return to my family for a limited time) will help me adjust to my life outside of prison."

The response to this later application, dated December 9, 1974 and reached after a hearing attended by Marquez, was as follows:

> RESPONSE—In compliance with Judge Cannella's Court Order of Nov. 25, 1974.

On 11–27–74 the team committee convened to consider the above request and reached the following conclusion:

Your request for placement in the CTC has been denied because

1. You indicate the availability of independent resources, home ownership, and a substantial financial family income.
2. You have no identifiable treatment needs of which the CTC could provide assistance.
3. Placement in the CTC would provide no positive impact on your reintegration into society.
4. Your alledged [sic] involvement in a crime of an organized nature requires Central Office approval.

Your request for a furlough has been denied because

1. You are not classified as full minimum custody.
2. A detainer is currently lodged against you.
3. The U.S. Probation Officer, who was contacted in compliance with furlough procedures, objected to a furlough.
4. You have been identified as being involved in large scale, organized criminal activity.

On December 16, 1974 this denial was affirmed by the Regional Office and, finally, on December 20, 1974 by the Central Office which stated:

> We have reviewed the case of Raymond Marquez, # 69180–158, raising the issue of his transfer to a Community Treatment Center or a furlough, and we find he is not suitable for either.

> Transfer to a Community Treatment Center is not appropriate since he has significant family and financial resources in the community and because the CTC program would not likely have an effect on lessening his chances of recidivism.

> Furlough is not appropriate since he has a substantive detainer and close custody, because the supervising U.S. Probation Officer objects, because of his proximity to release, and the fact that family visiting is readily available locally, where now confined.

> The Special Offender designation was not a consideration in the denial of transfer to a CTC or furlough. This decision is based on the factors cited in the two preceding paragraphs, totally independent of the Special Offender designation.

The Court has jurisdiction in this matter under 28 U.S.C. § 2241. Marquez is challenging both the place and condition of his confinement, alleging that he is in West Street in violation of 18 U.S.C. § 4082(c) pursuant to which he should be placed in a CTC or given a furlough. *See* Preiser v. Rodriguez, 411 U.S. 475, 499, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); Wilwording v. Swenson, 404 U.S. 249, 251, 92 S.Ct. 407, 30 L. Ed.2d 418 (1971) (per curiam); Williams v. Richardson, 481 F.2d 358, 360 (8th Cir. 1973); Leahy v. Estelle, 371 F.Supp. 951, 953–954 (N.D.Tex.1974); Gomez v. Miller, 341 F.Supp. 323, 328 (S.D.N.Y.1972) (three-judge court), aff'd 412 U.S. 914, 93 S.Ct. 2728, 37 L. Ed.2d 141 (1973). Having fully exhausted all administrative remedies this matter is ripe for consideration by this Court.

The question before the Court is whether or not the Bureau of Prisons acted in conformity with the terms and intent of 18 U.S.C. § 4082(c). Marquez makes no claim that he was denied procedural due process or that he was subject to any unconstitutional treatment other than the arbitrariness and capriciousness with which his requests were denied.

■ In reviewing the administrative determination of the Bureau of Prisons to deny Marquez a furlough or CTC placement, the scope of this Court's inquiry is limited. The Court has neither the power nor the expertise to determine when a furlough or CTC placement will prove useful as a rehabilitative device, or will merely result in an administrative reduction of sentence. Nonetheless, the days when Federal judges maintained an absolute hands-off policy towards the running of correctional institutions are long gone. This Court will not decline to exercise its authority to review denials of procedural due process or equal protection, or to prevent treatment which is shocking to the conscience or cruel and unusual. On the other hand, challenges such as Marquez', which allege that administrative decisions were made arbitrarily and capriciously take on overtones of judicial policy-making and substantive due process and, therefore, must be approached warily. In this regard, we are guided by the recent decision of Second Circuit Court of Appeals in United States ex rel. Johnson v. Chairman of N.Y. State Board of Parole, 500 F.2d 925, 930 (2d Cir.) vacated as moot, 419 U.S. 1015, 95 S.Ct. 488, 42 L.Ed.2d 289 (1974).

We do not question the Board's right within constitutional limits, "to make policy, establish procedures, and to decide particular cases with a minimum of interference." See Comment, Curbing Abuse in the Decision to Grant or Deny Parole, 8 Harv.Civil Rights—Civil Liberties L.Rev. 419, 438 (1973). Nor do we suggest that the courts should serve as "super-Parole Boards." *But judicial review should be available where the Board has arrogated to itself decisions properly made only by the legislature, when the Board's decision in a case is inconsistent with statutory directives, when improper criteria are used, or when its decision has no basis in·the prisoner's file.* We recognize that parole decision-making should involve difficult and sensitive diagnosis and prognosis in many cases, based on application and weighing of numerous factors of varying relevance [emphasis added].

■ Thus, the Court's role in a case such as this is to evaluate the written decision of the Bureau in light of the relevant legislation and to determine whether or not the decision has a basis in fact consonant with the legislative intent. *See* Ricketts ⁊. Ciccone, 371 F. Supp. 1249 (W.D.Mo.1974).

The statutory provision which permits the use of furloughs and CTC's as a part of the rehabilitative program in federal prisons is the recently amended 18 U.S.C. § 4082(c):

(c) The Attorney General may extend the limits of the place of confinement of a prisoner as to whom there is reasonable cause to believe he will honor his trust, by authorizing him, under prescribed conditions, to—

(1) visit a specifically designated place or places for a period not to exceed thirty days and return to the same or another institution or facility. An extension of limits may be granted to permit a visit to a dying relative, attendance at the funeral of a relative, the obtaining of medical services not otherwise available, the contacting of prospective employers, the establishment or re-establishment of family and community ties or for any other significant reason consistent with the public interest . . . .

As the legislative history indicates, this statute was recently amended to provide prison officials with greater flexibility in implementing a "new community-oriented approach to institutional corrections . . . designed to reduce recidivism by achieving two important goals: the maintenance and reinforcement of the offender's family and community ties during the period of his incarceration and the development of graduated release procedures which help ease the transition from confinement to life in the community." 1973 U.S.Code

Cong. & Admin.News, p. 3018. Congress determined that these goals could best be effectuated by expanding the discretion of prison officials regarding the reasons upon which community release could be made available, while at the same time focusing that discretion by setting forth numerous examples of the beneficial uses to which community release programs could be put.

As the Court of Appeals for the District of Columbia stated in regard to § 4082(c) prior to its recent amendment (but which is equally applicable to that section as it stands today):

> Both the literal terms and legislative history of Section 4082(c) make it clear that the decision as to whether or not to authorize work release is one dependent on an exercise of discretion by the Attorney General. Although Congress recognized in amending Section 4082 in 1965 that work release may, in some instances, be a valuable rehabilitative tool, it did not establish an absolute legal right to immediate work release such as is urged by petitioners.

Green v. United States, 157 U.S.App.D. C. 40, 481 F.2d 1140, 1141–1142 (D.C. Cir. 1973). While the 1973 amendment broadens the range of uses to which community release can be put, and the legislative history urges its expanded use as a rehabilitative tool, nowhere in the statute or its history is there the suggestion that its use is mandatory. Rather, Congress noted its full confidence in the ability of the Bureau of Prisons to determine which prisoners were best suited for community release. As the Senate Report puts it,

> Of course, the Committee is aware of possible risks involved in allowing any temporary release of convicted offenders. However, we believe that these risks are minimized by the Bureau's proven ability to screen potential inmate participants. Under present Bureau policy, inmate requests for participation in community programs are carefully reviewed on an individual basis. Only those individuals who are not dangerous, who are likely to live up to the trust placed in them, *and who need the kinds of help community resources can provide,* will be allowed to participate in community release (emphasis added).

1973 U.S.Code Cong. & Admin.News, p. 3021.

In light of the above discussed legislative history, this Court cannot state that the action of the Bureau in denying Marquez' requests was either arbitrary and capricious or contrary to congressional intent. As one court recently stated in a 4082(c) case,

> absent exceptional circumstances or denial of a federal constitutional or statutory right, courts will not undertake to review prison administration and decisions of the Attorney General with regard to federal prisoner's conditions of confinement.

Bartling v. Ciccone, 376 F.Supp. 200, 204 (W.D.Mo.1974).

The uncontradicted evidence showing petitioner's substantial financial means, and his incarceration in close proximity to an apparently stable family unit, provide a substantial basis in fact for denying his requests. This is not to suggest that given such a state of facts granting CTC or furlough would be an abuse of discretion, rather, it is merely that they constitute a rational basis for its denial in this case. Additionally, the allegations contained in Marquez' presentence and probation reports (to which he had access) plus the nature of the two crimes for which he was convicted and the sentences imposed therefor afforded the Bureau with a "reasonable basis in fact to conclude that the inmate was a prominent figure in a structured criminal syndicate composed of professional criminals who primarily rely on unlawful activity as a way of life." Masiello v. Norton, 364 F.Supp. 1133, 1135 (D. Conn.1973). Such a conclusion, rendered after the inmate is given the opportunity to present evidence to the contrary, provides a legitimate basis upon

which to deny Marquez' CTC (*see* Root, State Work Release Programs: An Analysis of Operational Policies, 37 Fed.Probation 52, 54 (Dec. 1973)) and furlough requests.

In conclusion, this Court finds nothing arbitrary or capricious in the actions of the Bureau of Prisons and denies Marquez' petition in all respects.

The application is denied and the petition is hereby dismissed. It is so ordered.