Max Bloom, J.
This proceeding was originally brought on by habeas writ. Inasmuch as its purpose was to review the result of relator’s "screening” by the Furlough Program Selection Committee, the court held that the matter was properly reviewable in an article 78 proceeding. It directed that the appropriate petition and answer be submitted so that the issues would be sufficiently defined to enable a determination on the merits (People ex rel. Cavalluzzo v Warden, 39 AD2d 897; People ex rel. Cromwell v Warden, 74 Misc 2d 642, 650). This has now been done.
There is no dispute with respect to the material facts. Briefly stated, they are'as follows:
On September 6, 1974, relator-petitioner was sentenced in Kings County to a term of one year for the crime of attempted bribery in the first degree. That sentence covered another charge of attempted bribery in the first degree then pending in the same court. Previously he had pleaded guilty on an identical charge in the Supreme Court, New York County.
Relator-petitioner was granted a one-week stay of execution *973 of the Kings County judgment. On September 13, 1974 he surrendered and started serving his sentence on the Kings County charge and was sentenced to probation on the New York County charge.
Approximately two months later relator-petitioner made application for a furlough. On November 20, 1974, that application was denied upon the ground that his probation report indicated identification "with 'organized criminal activity.’” Pursuant to a request made by the relator-petitioner for a personal interview, he was given a "screening” by the Furlough Program Selection Committee which, by written decision dated November 27, 1974, held him to be ineligible for the furlough program. The decision was based upon the ground, among others, that "it is rational and prudent to conclude that one of the criteria [for ineligibility] stipulated in the Commissioner’s General Orders on Furlough, namely, 'persons identified with large-scale or organized criminal activity’ encompasses this particular inmate’s social history.”
The purpose of the furlough program is to permit an eligible inmate to leave the premises of an institution for a period not in excess of 72 hours to seek employment; to maintain family ties; to solve family problems; to undergo surgery; or for any other reason necessary to the furtherance of these purposes (Correction Law, § 631, subd. 3; Commissioner’s General Orders, No. 31, 2[a][l], Nov. 13, 1972). To be eligible he must have served a minimum of six months of his sentence (Correction Law, § 631, subd. 2; General Orders, No. 31, 2[d][l]), at least three months of which must be served after sentence has been imposed (General Orders, No. 3, 2[d][l], Feb. 20, 1973). Among those who are classified as ineligible are "[p]ersons identified with large scale or organized criminal activity.” (General Orders, No. 31, 2[d][2f].)
Relator-petitioner commenced serving his sentence on September 13, 1974. His application for a furlough was made in November, approximately two months later. The prematurity of the application clearly warranted its denial (Correction Law, § 631, subd. 2; General Orders No. 31, 2[d][l]), and, indeed, is within the category of reasons ascribed by the Furlough Program Selection Committee for its rejection of the application. Accordingly, it is clear that the relief sought cannot be granted.
The problem posed, however, is of constitutional dimension. It bedevils the court with more than passing frequency. Ac *974 cordingly, it should not be dismissed without comment on the merits. (Matter of Rosenthal v Harwood, 35 NY2d 469, 472; Le Drugstore v New York State Bd. of Pharmacy, 33 NY2d 298, 300.)
Equal protection does not mean that all must be treated identically. Distinctions may be made when they are bottomed upon some rational basis and tend reasonably to further some legitimate State interest (McGinnis v Royster, 410 US 263, 270; Baxstrom v Herold, 383 US 107, 111). Accommodation to the practical problems of government ofttimes justifies, if it does not require, the acceptance of solutions which are less than scientific; even, upon occasion solutions which, to the uninitiated, seem illogical (Metropolis Theatre Co. v Chicago, 228 US 61, 69-70). Such accommodation need not dilute the quality of equal protection once the "rational basis” and "legitimate state interest” is demonstrated.
Where, however, such distinctions are made, they must be defined with the certainty necessary to enable equal application to all to whom the distinction applies. And it is here that the difficulty arises. Concededly, the State has a legitimate interest in treating differently those who are participants in an organization or syndicate, the members of which are regularly, systematically and professionally engaged in an ongoing general conspiracy of crime (Cf. Masiello v Norton, 364 F Supp 1133, 1135 [Conn]; Catalano v United States, 383 F Supp 346, 349-350 [Conn]), and the rational basis for different treatment is too obvious for comment. The rub lies not in the concept but in the definition or rather the absence of definition (Masiello v Norton, supra; Catalano v United States, supra; People v Ron-Ore Soil Systems, — Misc 2d —, 16 Cr LR 2403). Rule 2, d(2)(f) of General Orders No. 31 merely declares ineligible for the furlough program "persons identified with large-scale or organized crime.” Nowhere is there any endeavor to spell out what is meant. "Under this definition almost every prisoner who participated in a crime with another person could properly have his prison file jacket inscribed with an 'o/c’ label.” (Masiello v Norton, supra, p 1135.) Indeed, it is impossible to conclude other than that the meaning of the term "organized crime” in a particular fact setting would be dependent upon "the 'folklore’ of prison practices” (Catalano v United States, supra, p 349). Under such circumstances the potential for invidious discrimination is such as to negate equal protection.
*975 To hold that the present definition does not meet constitutional standards is not to say that such a definition cannot be fashioned (Catalano v United States, supra; Masiello v Norton, supra). It is only to say that the absence of such a definition in General Orders No. 31 brings it into conflict with the requirements of equal protection.
The other questions raised by relator-petitioner merit little consideration. The failure to make the Parole Board party to the proceeding violates the basic concept of procedural due process and deprives the court of jurisdiction to pass on the claim that parole was improperly denied (People ex rel. Cromwell v Warden, 74 Misc 2d 642, supra; Fuentes v Shevin, 407 US 67, 80-81; Goldberg v Kelly, 397 US 254, 261; Boddie v Connecticut, 401 US 371; Mullane v Central Hanover Trust Co., 339 US 306). Nor is there any merit to the contention of denial of due process. Although it is alleged that relator-petitioner has been denied the right to participate in programs open to other inmates, there is no showing that he made application for such programs nor is there any claim that he is eligible to participate therein.
The application is, in all respects, denied.