■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FRANCISCO CRUZ, Appellant. — Appeal by defendant from a judgment of the County Court, Westchester County (Ritter, J.), rendered July 10, 1981, convicting him of absconding from temporary release in the first degree, upon a jury verdict, and imposing sentence. Judgment affirmed. The evidence presented was sufficient for the jury to find, beyond a reasonable doubt, that defendant was guilty of the crime charged. To vacate the instant judgment would undermine the integrity of the furlough program. Damiani, Titone and Weinstein, JJ., concur.

Mollen, P. J., dissents and votes to reverse the judgment and dismiss the indictment, with the following memorandum: The defendant stands convicted of having failed to return from a 12-hour prison furlough granted to him about two weeks before his scheduled release on parole. His defense was that he had been under the mistaken belief that his release marked the beginning of his parole. Under the unusual circumstances at bar, I conclude that the People failed to establish that the defendant acted with the requisite criminal intent; therefore, I respectfully dissent and vote to reverse the judgment and dismiss the indictment. In early 1977, the defendant was an inmate at the Tappan Correctional Facility. For the most part, that facility housed prisoners who were awaiting parole. Accordingly, it had an active work release and furlough program designed to reorient inmates to life outside the institution and to enable them to find means of support once released. The defendant was scheduled to be paroled on April 14, 1977. On March 17, 1977, four weeks before his parole date, he was granted a four-day furlough. He returned to the institution as required, without incident. Thereafter, on March 31, 1977, merely two weeks before his scheduled release, the defendant received a 12-hour furlough. On this occasion, he failed to return. The defendant was subsequently arrested in New York City on a warrant issued solely in consequence of his failure to return from the furlough. He was subsequently indicted, tried and convicted for absconding from temporary release in the first degree. He received an indeterminate sentence of from 2 to 4 years' imprisonment. The majority now affirms the judgment. I am unable to concur. Section 205.17 of the Penal Law provides: "A person is guilty of absconding from temporary release in the first degree when having been released from confinement in a correctional institution under the jurisdiction of the state department of correctional services to participate in a program of temporary release, he *intentionally* fails to return to the institution of his confinement at or before the time prescribed for his return" (emphasis supplied). Thus, to secure a conviction for absconding from temporary release in the first degree, the People must prove that the defendant acted intentionally in that it was his "conscious objective" to abscond (see Penal Law, § 15.05, subd 1). In my view, the People failed to carry that burden in the case at bar. At trial, the prosecution's evidence established that both Robert Dennison, the chairman of the temporary release committee, and prison employee Jose Vilacova spoke to the defendant prior to his initial furlough — the one from which he returned as scheduled. Vilacova spoke to him in Spanish, Dennison in English and Spanish. In these conversations, the defendant was advised of the regulations governing the furlough program and of his obligations thereunder. In contrast, neither Dennison nor Vilacova could recall having spoken to the defendant prior to the second furlough. The People did prove that, prior to that furlough, the defendant executed a form which indicated the date and time at which he was required to return. That form, however, was written in English. The defendant, testifying in his own behalf, asserted that he is unable to read English and has only some small understanding of the spoken language. He acknowledged that before his first release he had had a conversation in Spanish with Jose Vilacova who explained his rights and obligations under the program. The defendant insisted, however, that no one had spoken to him before the second furlough and that be believed he was being released on parole at that time. As noted, the defendant was in fact scheduled to be paroled in approximately two weeks. To counter the defense of mistake and to establish the defendant's "conscious objective" to abscond, the People offered the rebuttal testimony of Jose Vilacova. He testified that a day after the defendant's scheduled return from the second furlough, he called defendant at his

aunt's home. Vilacova recounted the conversation as follows: "I remember the general conversation was to come back because he was going to be released in a few days, maybe two or three weeks. I don't remember the exact date. *He said that is a mistake*. I said, if you don't come back, in the future — you have your life in order already. You have a family, or whatever, and sooner or later you're going to come back; you make [*sic*] a mistake in this case; why don't you come back. I think his answer [was] I will be there, more or less, at 10 o'clock. I think that is the hour he told me" (emphasis supplied). The undisputed evidence, therefore, showed that two weeks before the incident in question, when the defendant was told in his native tongue of his obligation to return from a four-day furlough, he did so without incident. When the defendant was released again two weeks later, however, no one explained his obligations and he did not return. No evidence was adduced remotely suggesting any reason why the defendant would intentionally abscond from the 12-hour furlough but not from the four-day furlough two weeks earlier. Moreover, although the form signed by the defendant indicated his obligation to return, the uncontradicted evidence was that the defendant could not read it. And the defendant's asserted belief that he was being released on parole was entirely plausible since he was in fact scheduled to be paroled two weeks thereafter. Finally, the telephone conversation upon which the People so heavily rely to demonstrate intent was ambiguous at best. According to Vilacova, when he urged the defendant to return because he was going to be released in a few weeks, the defendant replied: "that is a mistake". The defendant's response plainly indicates his belief that Vilacova's assertion that he was not scheduled for parole for another two or three weeks was "a mistake". Thus, the conversation was entirely consistent with the defendant's testimony that he believed he had been released on parole. Viewing the evidence as a whole, therefore, I cannot agree that the People established their case beyond a reasonable doubt. In my opinion, the evidence presented is of insufficient quality to support the defendant's conviction and, accordingly, I would reverse (see, e.g., *People v Kidd,* 76 AD2d 665).