*600 OPINION OF THE COURT
Donald J. Mark, J.
This is an application by the defendant, who was convicted after a jury trial of the crime of absconding from temporary release in the first degree, pursuant to CPL 330.30, to vacate the verdict, upon the ground that insufficient trial evidence would require a reversal on appeal.
The trial evidence demonstrated that the defendant, an inmate of the Department of Correctional Services, was released from the Rochester Correctional Facility under a temporary release program designated as a “five and two program”; that under this program he was released from the facility from Friday at 7:00 a.m. until Wednesday at 8:00 p.m. of each week for the purpose of employment and residing with his mother at her residence and later with his wife at her residence; that during the period of the defendant’s release his parole officer had contact with him from 15 to 20 times at his work and residences; that the defendant signed three release memoranda of agreement on October 20, 1999 relating to his employment and his wife’s residence and which recited if he failed to return at the specified time he could be found guilty of a felony; that the defendant checked out of the facility on Friday at 7:00 a.m. on November 12, 1999, and failed to return by 8:00 p.m. on Wednesday, November 17, 1999; and that the defendant was arrested by the New York State Police on December 16, 1999.
The statutes applicable to this case are section 205.17 of the Penal Law and section 851 (3) and (4) of the Correction Law.
Penal Law § 205.17 provides as follows:
“A person is guilty of absconding from temporary release in the first degree when having been released from confinement in a correctional institution under the jurisdiction of the state department of correctional services * * * to participate in a program of temporary release, he intentionally fails to return to the institution or facility of his confinement at or before the time prescribed for his return.”
Correction Law § 851 (3) provides as follows:
“ ‘Work release program’ means a program under which eligible inmates may be granted the privilege of leaving the premises of an institution for a period not exceeding fourteen hours in any day for *601 the purpose of on-the-job training or employment, or for any matter necessary to the furtherance of any such purposes.”
Correction Law § 851 (4) provides as follows:
“ ‘Furlough program’ means a program under which eligible inmates may be granted the privilege of leaving the premises of an institution for a period not exceeding seven days for the purpose of seeking employment, maintaining family ties, solving family problems, seeking post-release housing, attending a short-term educational or vocational training course, or for any matter necessary to the furtherance of any such purposes.”
The defendant has consistently argued in a motion to dismiss the indictment pursuant to CPL 210.20 (3), in a motion for a trial order of dismissal pursuant to CPL 290.10 and in this motion to vacate the verdict, that his temporary release did not comport with Correction Law § 851 (3) and (4). The defendant claimed and claims that subdivision (3) was violated, because he was released for the purpose of employment for more than 14 hours in a day, and that subdivision (4) was violated, because the proof was lacking that he was released for any of the purposes enumerated in that subdivision,[1] and that as a result he could not incur criminal liability but only administrative sanctions.
As the motions to dismiss the indictment and for a trial order of dismissal were denied, this motion must likewise be denied.
A reading of subdivisions (3) and (4) readily discloses that there is a “work release program” and a “furlough program,” but no “five and two program.” This is an innovation[2] which combines the two subdivisions, and it is this union which forms part of the defendant’s complaint.
The “five and two program” is a legally acceptable combination for the temporary release of an inmate in accordance with these two subdivisions. The defendant could be released for “maintaining family ties” as provided for in subdivision (4) as he was released “for a period not exceeding seven days,” and this subsumed subdivision (3) which authorizes an inmate’s release “for the purpose of* * * employment” “for a period not *602 exceeding fourteen hours in any day” (see, People v Teddy, 227 AD2d 182 [defendant properly pleaded guilty to a violation of Penal Law § 205.17 although that statute made no reference to electronic monitoring; just as this section and the two subdivisions make no reference to a “five and two program”]).
This answers the defendant’s contention that subdivision (3) was violated.
The defendant’s assertion that he was not released for a purpose allowed by subdivision (4) is belied by the testimony and exhibits that were produced at the trial.
The assistant deputy superintendent of the facility testified that the defendant was released under a family and work release program; the defendant’s parole officer testified that he had contacted the defendant at both work and home; and the same parole officer testified that he had approved the defendant’s residence with his mother and later with his wife. The defendant is correct that there was no testimony explaining “family ties” or how his release was for the purpose of “maintaining family ties.”
One document dated October 20, 1999, executed by the defendant, and received as an exhibit, was termed “Memo of Agreement-Work Release” and pertained to the defendant’s employment. A second document dated the same day executed by the defendant, and received as an exhibit, was also termed “Memo of Agreement-Work Release” and essentially granted the defendant permission to reside with his wife at her residence from Friday at 7:00 a.m. until Wednesday at 8:00 p.m. As pointed out by the defendant, this second document is a misnomer, and it lends credence to his claim that he was not released in accordance with subdivision (4).
However, the testimony and the exhibits just described are sufficient to show compliance with subdivision (4), as the defendant was released for the purpose of maintaining family ties (see, People ex rel. Dioguardi v Warden, 80 Misc 2d 972). The defendant after being confined to a State correctional facility was authorized to reside first with his mother and later with his wife, and these living arrangements had the effect of reuniting the defendant with his mother and subsequently reuniting the defendant with his wife (see, Matter of Nathaniel T., 97 AD2d 973, 974 [“It is the purpose of the Family Court Act to rehabilitate and reunite families whenever possible”]).[3]
This answers the defendant’s contention that subdivision (4) was violated.
*603 Thus, as a matter of law, the “five and two program” was a proper one as a combination of subdivisions (3) and (4), and the defendant was appropriately released in compliance with subdivision (3) as subsumed by subdivision (4); whether the defendant was released in accordance with subdivision (4) for the purpose of maintaining family ties as it impacted on the guilt or nonguilt of the defendant was an issue of fact to be resolved by the jury.[4]
Accordingly, the application of the defendant to vacate the verdict is denied.

. The defendant summed by listing the six categories in that subdivision and that he was not released in accordance with any one of them.

. There was no testimony whether this was a concept developed by the Department of Correctional Services or the Rochester Correctional Facility.

. This language would seem tantamount to “maintaining family ties.”

. The other issue of fact was whether the defendant intentionally failed to return to the facility for 29 days (see, People v Cruz, 95 AD2d 860).