Wayne Darrell HARNESS,
# 88796–132, Petitioner,

v.

Irl E. DAY, Warden, Respondent.

No. CIV–76–0447–D.

United States District Court,
W. D. Oklahoma.

Aug. 23, 1976.

Wayne Darrell Harness, pro se.

David L. Russell, U. S. Atty., by William S. Price, and Drew Neville, Asst. U. S. Attys., Oklahoma City, Okl., for respondent.

## ORDER

DAUGHERTY, Chief Judge.

The above-named petitioner a federal convict confined in the Federal Reformatory at El Reno, Oklahoma, has filed this proceeding for writ of habeas corpus in which he attacks the validity of a Detainer lodged by the State of .Illinois with the respondent and claims that the allegedly invalid Detainer is depriving him of the opportunity to participate in various programs at the institution. He contends that the Detainer from the State of Illinois is invalid because he has been denied the parole revocation hearings mandated in *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). The respondent through the United States Attorney has filed a Response denying that the petitioner is entitled to an immediate parole revocation hearing by the State of Illinois.

There is no apparent disagreement concerning the facts. On August 3, 1973, the petitioner, Wayne Darrell Harness, was convicted of Burglary by an Illinois State Court. On February 19, 1974 he was sentenced to imprisonment for a term of one to three years. He was then paroled by the State of Illinois on November 18, 1974. While on parole the petitioner on July 15, 1975, was convicted in the United States District Court for the Southern District of Illinois of the crime of Distribution of Heroin in violation of 21 U.S.C. § 844 and sentenced to a term of five years imprisonment. He is presently serving this sentence in the custody of the Attorney General at the Federal Reformatory at El Reno, Oklahoma. As a result of his federal conviction the State of Illinois issued a Parole Violator's Warrant which has been lodged with the respondent. The petitioner has requested that a revocation hearing be held but the State of Illinois has indicated no revocation hearing will be conducted until the completion of the intervening sentence now being served by petitioner.

The petitioner urges this court to adopt the rule of *Cooper v. Lockhart,* 489 F.2d 308 (CA8 1973). See also *Cleveland v. Ciccone,* 517 F.2d 1082 (CA8 1975). This is not the law in this circuit. In a similar context, the Court of Appeals for the Tenth Circuit held that a state prisoner had not been denied due process of law because the Board of Parole did not grant a parole revocation hearing promptly after a federal revocation warrant had been issued and a detainer lodged with his state custodian. *Small v. Britton,* 500 F.2d 299 (CA10 1974). In considering the implications of *Morrissey v. Brewer,* supra, in this situation the Court found that the operative fact which entitled the petitioner to a revocation hearing was the execution of the warrant. The Court reasoned:

"A federal parolee is not taken into custody until after the parole revocation warrant has been executed. Accord, *Cook v. United States Attorney General,* 488 F.2d 667 (5th Cir. 1974). 18 U.S.C.A. § 4207 provides that a parolee is entitled to a hearing only after he is 'retaken upon a warrant.' (Emphasis added.) If the wording of a provision of a statute is plain, clear and unambiguous, its evident meaning must be accepted. 2A Sutherland, Statutory Construction § 45.02 (4th Ed. 1973.)

"We recognize that there are decisions from other federal courts which support Small's contention that a parolee is entitled to a revocation hearing (and the attendant opportunity to present 'mitigating' circumstances), within a reasonable time after an alleged parole violation even where the parole revocation warrant is based upon the commission of a crime for which the parolee has been convicted. *Fitzgerald v. Sigler,* 372 F.Supp. 889 (D.D.C.1974); *Jones v. Johnston,* 368

F.Supp. 571 (D.D.C.1974); *Sutherland v. District of Columbia Board of Parole,* 366 F.Supp. 270 (D.D.C.1973); Cf., *Cooper v. Lockhart,* 489 F.2d 308 (8th Cir. 1973). Contrary to our interpretation and holding, these decisions stand for the proposition that it is the 'issuance' rather than the 'execution' of the revocation warrant which triggers the due process time limits for the revocation hearing set forth in *Morrissey.* We disagree. We find no such mandate in the Supreme Court's decision." 500 F.2d at 301, 302.

■ Likewise, petitioner's complaint about the effect of the Detainer upon the present conditions of his confinement is without merit. It is the basic rule that the control and management of federal penal institutions lies within the sound discretion of the responsible administrative agency, and judicial review will be granted only upon a showing that prison officials exercised their discretionary powers in such a manner as to constitute clear abuse or caprice. *Daughtery v. Harris,* 476 F.2d 292 (CA10 1973), cert. denied, 414 U.S. 872, 94 S.Ct. 112, 38 L.Ed.2d 91. In a comparable situation involving the "special offender" status applied to the petitioner in *Marchesani v. McCune,* 531 F.2d 459 (CA10 1976), in refusing to interfere with the actions of prison officials the court pointed out:

> "The duty to classify inmates rests with federal prison officials.
>
> 18 U.S.C. § 4081 provides:
>
> The federal penal and correctional institutions shall be so planned and limited in size as to facilitate the development of an integrated system which will assure the proper classification and segregation of Federal prisoners according to the nature of the offenses committed, the character and mental condition of the prisoners, and such other factors as should be considered in providing an individualized system of discipline, care, and treatment of the persons committed to such institutions.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> When a plaintiff seeks to enjoin or prohibit the activity of a government agency, his case must contend with the well-established rule that the government has traditionally been granted the widest latitude in the dispatch of its own internal affairs. *Cafeteria Workers v. McElroy,* 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). Accordingly, when due process contentions are raised relative to the operation, maintenance and administration of the penal system, the courts should be acutely aware that caution must be exercised in achieving a careful balance of the interest of that system as against the interests of the prisoners. *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)."

531 F.2d at 461.

The holding by the court in *Holt v. Moore,* 357 F.Supp. 1102 (W.D.N.C.1973). relied upon by petitioner, that some undefined procedural due process is required before a Detainer based upon a conviction can be given any effect by the prisoner's custodian manifests a disregard of those controlling considerations recognized by the court in *Marchesani:*

> "It is the duty of those charged with the administration of federal prisons to see that prisoners are treated properly, giving due recognition to the fact that rights and privileges which are not constitutionally guaranteed must necessarily be varied in application in order to accommodate the particular needs and exigencies of the penal environment. Prisoners are, by definition, prisoners. Many 'in house' regulations and decisions of prison authorities which may be considered as deprivations of 'property' or 'liberty' under other circumstances and environs, are necessary in order to protect the prisoner, to protect other prisoners, and to operate the institution. Many prisoners are unpredictable. Prison setting is, at best, tense. It is sometimes explosive, and always potentially dangerous. The judgments of prison authorities, under such circumstances, are often predicated on 'educated' estimates or guesses resting on suspicion. The overall atmosphere does not blend with many of

the traditional 'due process' requirements. The problem was perhaps best placed in focus in *Cafeteria Workers v. McElroy,* supra:

> . . . consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action. .
>
> 367 U.S. at 895, 81 S.Ct. 1743, at 1748, 6 L.Ed.2d 1236.
>
> See also *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)."

531 F.2d at 462.

More consistent with these principles which have been uniformly applied in this circuit is the holding of the court in *Lawrence v. Blackwell,* 298 F.Supp. 708, 714 (N.D.Ga.1969);

> "While the state detainers placed on these plaintiffs restrict their privileges, the courts cannot declare those restrictions per se capricious. The prison authorities have made the judgments, based on experience and expertise, that prisoners with detainers warrant more restrictive treatment. Even if we might disagree, the court cannot quarrel with their judgment, for the administration of the prisons is within the purview of the Executive, not the Judicial branch."

The mere fact that the presence of the State Detainer may effect the present conditions of petitioner's confinement does not entitle him to relief. *Carson v. Executive Director, Department of Parole,* 292 F.2d 468 (CA10 1961).

Accordingly, the Petition for Writ of Habeas Corpus will be denied.

IT IS SO ORDERED.