**Peter John MILANO, Petitioner,**

v.

**Lee JETT, Warden, Bureau of Prisons, Respondent.**

**No. 76–2573–AAH.**

United States District Court, C. D. California.

Nov. 23, 1976.

Marks & Heaman by Donald B. Marks, Beverly Hills, Cal., for petitioner.

William D. Keller, U. S. Atty. by Robert S. Thaller, Special Atty., U. S. Dept. of Justice, Los Angeles, Cal., for respondent.

## DECISION DENYING PETITION FOR WRIT OF HABEAS CORPUS

HAUK, District Judge.

This case, having come on for argument and hearing on November 1, 1976, the Court, being fully advised in the premises, now renders its decision denying the Petition for Writ of Habeas Corpus.

On August 31, 1974, (by jury verdict), on April 9, 1975 (by negotiated guilty plea) and on May 16, 1975, (by negotiated guilty plea), the Petitioner, Peter John Milano, was convicted on three separate charges for violations of 18 U.S.C. §§ 371 [1] and 1955 [2] (conspiracy to operate an illegal gambling busi-

1. § 371. *Conspiracy to commit offense or to defraud United States*

If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor. 18 U.S.C. § 371

2. § 1955. *Prohibition of illegal gambling businesses*

(a) Whoever conducts, finances, manages, supervises, directs, or owns all or part of an

ness in channels of interstate commerce); 18 U.S.C. § 1962(d)[3] (conspiracy to engage in an enterprise affecting interstate commerce through a pattern of racketeering involving extortion, gambling and fraud); and 21 U.S.C. § 846[4] and § 841(a)(2) and

illegal gambling business shall be fined not more than $20,000 or imprisoned not more than five years, or both.

(b) As used in this section—

(1) "illegal gambling business" means a gambling business which—

(i) is a violation of the law of a State or political subdivision in which it is conducted;

(ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and

(iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.

(2) "gambling" includes but is not limited to pool-selling, bookmaking, maintaining slot machines, roulette wheels or dice tables, and conducting lotteries, policy, bolita or numbers games, or selling chances therein.

(3) "State" means any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States.

(c) If five or more persons conduct, finance, manage, supervise, direct, or own all or part of a gambling business and such business operates for two or more successive days, then, for the purpose of obtaining warrants for arrests, interceptions, and other searches and seizures, probable cause that the business receives gross revenue in excess of $2,000 in any single day shall be deemed to have been established.

(d) Any property, including money, used in violation of the provisions of this section may be seized and forfeited to the United States. All provisions of law relating to the seizure, summary, and judicial forfeiture procedures, and condemnation of vessels, vehicles, merchandise, and baggage for violation of the customs laws; the disposition of such vessels, vehicles, merchandise, and baggage or the proceeds from such sale; the remission or mitigation of such forfeitures; and the compromise of claims and the award of compensation to informers in respect of such forfeitures shall apply to seizures and forfeitures incurred or alleged to have been incurred under the provisions of this section, insofar as applicable and not inconsistent with such provisions. Such duties as are imposed upon the collector of customs or any other person in respect to the seizure and forfeiture of vessels, vehicles, merchandise, and baggage under the customs laws shall be performed with respect to seizures and forfeitures of property used or intended for use in violation of this section by such officers, agents, or other persons as may be designated for that purpose by the Attorney General.

(e) This section shall not apply to any bingo game, lottery, or similar game of chance conducted by an organization exempt from tax under paragraph (3) of subsection (c) of section 501 of the Internal Revenue Code of 1954, as amended, if no part of the gross receipts derived from such activity inures to the benefit of any private shareholder, member, or employee of such organization except as compensation for actual expenses incurred by him in the conduct of such activity.

18 U.S.C. § 1955

**3.** § 1962. *Prohibited activities*

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in or the activities of which affect, interstate or foreign commerce. A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern or racketeering activity of the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.

(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section.

18 U.S.C. § 1962(d)

**4.** § 846. *Attempt and conspiracy*

Any person who attempts or conspires to commit any offense defined in this subchapter

(b)[5] (conspiracy to possess heroin with the intent to distribute it). After being sentenced to negotiated terms of three 4-year concurrent periods, the petitioner voluntarily surrendered to prison officials at the Terminal Island Federal Correctional Institution at San Pedro, California, and is currently incarcerated in that facility. On December 9, 1975, the petitioner was designated a "Special Offender" under Bureau of Prisons Policy Statement 7900.47, dated April 30, 1974. Upon successive administrative appeals from the "Special Offender" classification, and on April 29, 1976, the "Special Offender" designation was removed and the petitioner was re-classified as a "Central Monitoring Case" within the Central Monitoring System pursuant to Policy Statement 7900.53, dated April 7, 1976, issued by the Federal Prison System.[6]

Upon further appeal to the Regional Director, the new classification of "Central Monitoring Case" was affirmed on May 24, 1976[7] and reaffirmed by the Central Office General Counsel on August 3, 1976.[8]

In seeking habeas relief before this Court, the petitioner makes the following contentions:

(1) That he has suffered a "grievous loss" of liberty as a result of his Special Offender/Central Monitoring designation; and

(2) That he was denied due process of law, because he was not afforded notice and a hearing with the opportunity to present documentary evidence and oral testimony, and to confront witnesses, all with the aid of retained counsel, at the occasions of his Special Offender/Central Monitoring classifications.

■ The Ninth Circuit has held that "[t]he right to procedural due process turns upon whether there is an infringement of 'liberty' (*Morrissey v. Brewer,* 408 U.S. 471, 482, 92 S.Ct. 2593, 33 L.Ed.2d 484 [1972]), not upon whether the deprivation is characterized as 'administrative' rather than 'disciplinary,' or involves loss of a 'privilege' rather than a 'right.' *Clutchette v. Procunier,* 510 F.2d 613, 615 (9th Cir. 1975)." *Lokey v. Richardson,* 527 F.2d 949, 952 (9th

is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

21 U.S.C. § 846

5. § 841. *Prohibited acts A—Unlawful acts*

(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or

(2) to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance.

**Penalties**

(b) Except as otherwise provided in section 845 of this title, any person who violates subsection (a) of this section shall be sentenced as follows:

(1)(A) In the case of a controlled substance in schedule I or II which is a narcotic drug, such person shall be sentenced to a term of imprisonment of not more than 15 years, a fine of not more than $25,000, or both. If any person commits such a violation after one or more prior convictions of him for an offense punishable under this paragraph, or for a felony under any other provision of this subchapter or subchapter II of this chapter or other law of the United States relating to narcotic drugs, marihuana, or depressant or stimulant substances, have become final, such person shall be sentenced to a term of imprisonment of not more than 30 years, a fine of not more than $50,000, or both. Any sentence imposing a term of imprisonment under this paragraph shall, in the absence of such a prior conviction, impose a special parole term of at least 3 years in addition to such term of imprisonment and shall, if there was such a prior conviction, impose a special parole term of at least 6 years in addition to such term of imprisonment.

21 U.S.C. § 841(a)(2) and (b)

6. Bureau of Prisons Policy Statement 7900.-53, dated April 7, 1976, replaces Policy Statement 7900.47, dated April 30, 1974, and provides for the classification of prisoners under the Central Monitoring System in cases where the offender, who by reason of his offense, criminal record, institutional behavior, or notoriety requires especially close supervision. For the full, detailed text of this Policy Statement 7900.53 of April 7, 1976 see Appendix A hereto.

7. See Appendix B attached hereto.

8. See Appendix C attached hereto.

Cir. 1975). It is the contention of the petitioner that his classification as a "Special Offender/Central Monitoring Case" has resulted in the loss of "social furloughs" previously afforded to him prior to his classifications as a "Special Offender/Central Monitoring Case," thereby resulting in a loss of a "right" and therefore a "deprivation of liberty" that mandates procedural due process.

Although the loss alleged by the petitioner at first glance would seem to fall within those types of "marked changes" in an inmate's status, which as a result of such a designation create a loss of "liberty," *Lokey,* 527 F.2d at 953, this Court finds that the factual setting here involved distinguishes this case from the authority upon which the petitioner relies. It is true that the *Lokey* decision and the other cases cited by the petitioner—*Cardaropoli v. Norton,* 523 F.2d 990 (2d Cir. 1975), and *Catalano v. United States,* 383 F.Supp. 346 (D.Conn. 1974)—require that the due process procedural safeguards of notice and a hearing be afforded in "Special Offender" classification matters. In each of these cases, the classifications in question resulted from unsubstantiated allegations or mere investigative reports of the types of activities which would permit the classification of an inmate under the "Special Offender" Policy Statement. *Lokey v. Richardson,* 527 F.2d 949, 950 (9th Cir. 1975); *Cardaropoli v. Norton,* 523 F.2d 990, 992 (2d Cir. 1975); *Catalano v. United States,* 383 F.Supp. 346, 347–48 (D.Conn.1974). However, in the present case the petitioner's own moving papers reveal that the basis for the classification under the "Central Monitoring System" Policy Statement was Milano's conviction for "racketeering activities." [9] 18 U.S.C. § 1962(d) [10]

This Court finds and concludes that the basis of petitioner Milano's classification is necessarily in accord with the facts of the case of *Marchesani v. McCune,* 531 F.2d 459 (10th Cir. 1976), wherein the Tenth Circuit held that the classification of an inmate as a "Special Offender" based upon the *nature* of his *actual* criminal conviction, rather than upon *unsupported allegations* of *possible* connections to organized crime, did not violate due process of law. 531 F.2d at 460–61.

The petitioner contends that his conviction under the racketeering statute (18 U.S.C. § 1962[d]), which was the result of an "Alford plea" pursuant to *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), distinguishes his situation from the *Marchesani* decision where the underlying conviction used as the basis for the "Special Offender" classification was the product of a trial by jury. This Court rejects the petitioner's contention and finds that Milano's guilty plea in the racketeering case serves as a sound basis for his classification as a "Central Monitoring Case" under the "Central Monitoring System" of the Federal Prison System Policy Statement 7900.53. See Appendix A.

By reason of, and in accordance with the foregoing decision, which shall also constitute findings of fact and conclusions of law, pursuant to Federal Rule of Civil Procedure 52, the Court in addition files its formal findings of fact and conclusions of law.

## FINDINGS OF FACT

1. On August 31, 1974, petitioner was convicted after jury trial in the Central District of California of conspiring to operate an illegal gambling business and to use interstate commerce in aid of racketeering (18 U.S.C. § 371), and of substantive offense of operating an illegal gambling business (18 U.S.C. § 1955). He was sentenced by the Honorable Jesse W. Curtis to four years incarceration;

2. On April 9, 1975, petitioner pleaded guilty to conspiracy to engage in an enterprise effecting interstate commerce through a pattern of racketeering activity, i. e., extortion, illegal gambling, fraud and illegal collection of debts (18 U.S.C. § 1962[d]). Petitioner Milano waived pro-

9. See Footnote 8 *supra.*

10. See Footnote 3 *supra.*

bation report and was sentenced to four years incarceration by the Honorable Robert Firth, concurrent with Judge Curtis' prior sentence.

3. On May 16, 1975, petitioner Milano pleaded guilty to conspiracy to possess heroin with intent to distribute it (21 U.S.C. §§ 846 and 841[a][2] and [b]). Petitioner waived probation report and was sentenced by the Honorable Robert Firth to four years incarceration, concurrent with the two previous sentences plus a mandatory special parole term of three years.

4. On June 27, 1976, petitioner Milano surrendered at the Federal Correctional Institution, Terminal Island, California.

5. On or about December 9, 1975, petitioner Milano was advised by Bureau of Prisons Unit Manager Eduardo Castorena that on December 9, 1975, he had been designated a Special Offender under Category 2 of Bureau of Prison Policy Statement 7900.47, dated April 30, 1974.

6. By a Request for Administrative Remedy dated April 7, 1976, Milano, petitioner herein, requested that the Special Offender designation be removed. On April 15, 1976, petitioner's request was denied in writing because he met the criteria of:

> "Cases where official investigative reports show that an offender was involved in sophisticated criminal activity of an organized nature, or was a close or frequent associate of individuals involved in organized criminal activity."

7. On April 22, 1976, petitioner appealed from the "Special Offender" designation and the denial of his Request for Administrative Remedy.

8. On April 29, 1976, petitioner was advised in writing that the "Special Offender" Policy Statement under which he had been classified had been cancelled and replaced by Bureau of Prisons Policy Statement 7900.53, dated April 7, 1976, and that under that statement Milano was designated in Category B-3, based upon his "Record of Sophisticated Criminal Activity."

9. On May 24, 1976, petitioner's appeal was denied under the new Policy Statement No. 7900.53, and he was advised:

> "In accordance with the new Policy Statement, Central Inmate Monitoring System No. 7900.53 dated 4-7-76, you are designated as a Central Monitoring case under ¶ 3(B)(3), because of your involvement in criminal activity of a sophisticated nature. On 4-29-76, you were advised of this and were provided the opportunity to respond and object to the designation if you desired. In accordance with the Policy Statement mentioned above, the institution will forward to the Central Office the information which they believe justifies your designation as a Central Monitoring case, including a summary of your objections, if any. The Central Office will then notify the institution and you of its decision as to whether or not you should be classified as a Central Monitoring case. If you are dissatisfied with the Central Office's decision, you may appeal directly to the Central Office through the Administrative Remedy procedures without appealing through the institution and Regional levels. The new policy statement provides you with the opportunity you request to review the Classification and to present any objections."

10. The final administrative appeal was filed by Milano on May 6, 1976, and was denied by the Central Office General Counsel on August 3, 1976, and petitioner was advised as follows:

> "We have reviewed your Administrative Remedy complaint and appeals in which you contest your central monitoring case designation. This designation is an administrative act governed by Policy Statement 7900.53. In the designation process confidential investigative reports were submitted by criminal justice agencies concerning you which substantially show your involvement in criminal activity of a sophisticated nature. This is supported by your conviction in United States District Court for racketeering activities. Therefore, we find the central

monitoring designation in your case is appropriate, and your appeal is denied."

CONCLUSIONS OF LAW

Based upon the foregoing, and upon the files and records of the United States District Court for the Central District of California in Cases No. CR 13466–JWC, CR 74–1007–RF, and CR 75–718–RF, all of which the Court takes judicial notice, it is hereby concluded:

1. That the Bureau of Prisons has complied with the procedural requirements of Policy Statement 7900.53, dated April 7, 1976.

2. That the Bureau of Prisons classification of petitioner as a "Central Monitoring Case" under Policy Statement 7900.53 is amply supported by the nature, facts and frequency of petitioner Milano's convictions alone, and does not rely upon unsupported allegations or reports.

3. That because of this indisputable factual basis justifying petitioner's classification, this matter herein is controlled by *Marchesani v. McCune*, 531 F.2d 459 (1976), and is distinguishable from such cases as *Cardapoli v. Norton*, 523 F.2d 990 (1975) and *Lokey v. Richardson*, 527 F.2d 949 (1975).

4. That petitioner's designation as a "Central Monitoring Case" based upon his record of "sophisticated criminal activity" was appropriately made in a manner consistent with petitioner's rights to due process and in full accordance with Federal Prison System Policy Statement No. 7900.-53.

IT IS THEREFORE ORDERED that Peter John Milano's Petition for Writ of Habeas Corpus should be and is denied.

APPENDIX A

**FEDERAL PRISON SYSTEM** **WASHINGTON, D.C. 20534**

# Policy Statement

| NUMBER |
|---|
| 7900.53 |

| DATE |
|---|
| 4–7–76 |

SUBJECT: CENTRAL INMATE MONITORING SYSTEM

1. PURPOSE. The Bureau of Prisons monitors and controls the transfer and community activities participation of certain inmates who pose special management problems by maintaining in its Central Office in Washington, D.C., a record of such inmates, known as "Central Monitoring Cases," and requiring prior Central Office approval for such transfers or community activities. Such centralized monitoring is not for the purpose of precluding transfers or participation in community activities for inmates who are otherwise eligible, but to provide coordination and consistency where necessary.

2. DIRECTIVES AFFECTED. Policy Statement 7900.47 dated 4/30/74 is hereby cancelled.

3. BASIS FOR "CENTRAL MONITORING CASE" DESIGNATION. The objective of this policy and these procedures is to maintain a centralized decision-making authority in certain types of case management situations where more than one inmate in more than one institution are involved and to provide consistent policy application review of field decisions in cases where there are particularly unusual or extreme circumstances to be considered. It is this objective that is to be kept in mind when referring to the Central Office cases to be considered as Central Monitoring Cases.

Cases are often designated by the Central Office as Central Monitoring Cases at the time an institution is designated for service of sentence. The receiving institution is notified, usually by copy of the designation teletype. Other cases are identified by the receiving institution and referred to the Central Office for consideration as Central Monitoring Cases, and the Central Office either confirms or denies their appropriateness.

A. Offenders who require protection because they may be in serious danger if confined in the same facility with certain other offenders or in certain geographical areas are considered Central Monitoring Cases. Likewise, the offenders from whom such protection cases are to be separated are also designated as Central Monitoring Cases in order to maintain the separation.

Offenders who by reason of their offense, criminal record, institutional behavior, or notoriety require especially close supervision are designated as Central Monitoring Cases.

Such cases include:

(1) extremely dangerous offenders whose escape attempts or other disruptive activities have been or would likely be of significant danger to others;

(2) offenders who have made threats to high government officials;

(4) other offenders who require close supervision for their own or others' protection.

C. All offenders in Bureau of Prisons facilities serving state commitments under contract with the non-federal authority are considered Central Monitoring Cases. This does not include offenders serving concurrent federal and non-federal sentences nor District of Columbia offenders unless another rationale for a Central Monitoring Case designation, outlined above, applies. Acceptance of such cases for Bureau of Prisons placement is at the Central Office level, as are arrangements for return to state custody should the need arise, and thus a basic file is maintained there. NOTE: All such non-federal offenders are recorded and reported (See paragraph 5) as "C", even if another of the above reasons for a Central Monitoring Case designation is also applicable.

4. PROCEDURES. The Chief Executive Officer of each Bureau of Prisons facility, including Community Treatment Centers, shall assign responsibility for the operation of the Central Monitoring Case program to one person. Institution staff may tentatively determine that an offender should be designated as a Central Monitoring Case based upon court records, information from the Central Office, or another reliable source. A copy of the offender's completed Form BP–5.1 (Sentence Data Summary) is then forwarded promptly to the Population Management Section, Central Office. On the reverse of the BP–5.1 and attachments if necessary, the institution is to clearly and thoroughly report the reasons for the Central Monitoring Case designation, utilizing the format provided in Attachment A. Care should be taken to provide the Central Office with all information that might be pertinent to determining if a Central Monitoring Case designation is valid as well as to making future decisions about the case. Justification for the designation must also be readily apparent in the offender's central file at the institution.

The rationale submitted for a Central Monitoring Case designation is reviewed in the Central Office, and the institution is informed that the designation is either confirmed or denied.

Each offender designated as a Central Monitoring Case must be notified of the designation and the reason or reasons for it and given an opportunity to present additional information to be considered. In cases where the Central Monitoring Case designation is made by the Central Office at the time an institution is designated for service of sentence, notice is to be given to the offender within 10 days of his arrival at that institution. In cases where a Central Monitoring Case designation is recommended by the institution and is to be referred to the Central Office for confirmation, notice is to be given to the offender and he or she is to be given an opportunity to respond before the referral to the Central Office is made.

(1) The inmate is advised in writing that he or she is to be so designated and advised of the reason(s). In advising of the reasons, however, care must be taken so as to not compromise security or safety.

(2) The inmate is given the opportunity to respond and object to the designation if he or she desires to do so. His or her response may be made orally to the person designated by the Chief Executive Officer to supervise this program, and he or she may also submit written information. If the inmate indicates that the information must be obtained from outside the

institution, he or she may be given a reasonable time (ordinarily not to exceed 30 days) to provide it.

(3) The institution forwards to the Central Office complete information justifying the Central Monitoring Case designation, including a summary of the inmate's objections and a copy of all written material submitted by the inmate, under (2) above.

(4) The Central Office notifies the institution and the inmate of the decision. The inmate is also advised that he or she may appeal the decision directly to the General Counsel in the Central Office through the Administrative Remedy procedures, without first appealing through the institutional and regional levels.

If designated a Central Monitoring Case, an offender may not be transferred (except for medical emergencies) or participate in community programs without prior approval from the Central Office, and a stamped notation of this restriction is to be placed on the front of the inmate's central file jacket in the institution and on the Form BP–5 (Sentence Computation Record). Also, in situations where a Federal prisoner who is a Central Monitoring Case is placed in a state institution, the respective Regional Office shall similarly stamp the offender's file.

Institutions may honor writs of habeas corpus for production of Central Monitoring Cases in U. S. Courts without prior approval from the Central Office, however some such cases are noted to require that the Central Office and the Criminal Division of the Department of Justice be notified of the offender's removal.

Any institution recommending Central Office approval of a transfer or furlough or other community activity for a Central Monitoring Case is to refer the case by memo or teletype message to the Population Management Section, Central Office. Normally, such referrals are made only if the institution has ascertained that the offender is otherwise eligible and if the institution is recommending that the proposed action be approved.

5. REPORTING. The Central Office maintains a record of all Central Monitoring Cases. By the 5th day of each month each Bureau of Prisons' facility is to send to the Population Management Section, Room 530, a monthly summary of changes in Central Monitoring Case lists during that month. Such changes include additions, deletions, transfers in or out, writ productions, releases, category changes, etc. These lists are to be submitted in duplicate. The attached instructions (Attachment B) and format (Attachment C) are to be used in submitting such monthly reports. A report is to be submitted each month from each facility even if there are no changes to report.

/s/ NORMAN A. CARLSON
Director, Bureau of Prisons
Commissioner, Federal Prisons Industries, Inc.

BP-DIR-10
REV. 10-74

APPENDIX B

## FEDERAL BUREAU OF PRISONS

## REGIONAL APPEAL

### RESPONSE FOR ADMINISTRATIVE REMEDY REQUEST

To: Regional Director, Bureau of Prisons

From: Milano, Peter John (LAST NAME, FIRST, MIDDLE INITIAL) — 18137–148 (REG. NO.) — Terminal Island (INSTITUTION)

*** Part A—REASON FOR APPEAL**

In the April 15, 1976 response to my request for Administrative Remedy, I was advised that I have been designated as a Special Offender because of certain "investigations conducted by the U. S. Attorney and the Department of Justice". Please remove this classification until such time as I have had an opportunity to review and defend myself with respect to the "investigations". I believe that our system of justice requires this.

April 22, 1976
DATE

/s/ Peter John Milano
SIGNATURE OF REQUESTOR

* THE COMPLETED FORM NO. BP-DIR-9 MUST ACCOMPANY THIS APPEAL.

**Part B—RESPONSE**

In accordance with the new Policy Statement, Central Inmate Monitoring System, No. 7900.53 dated 4–7–76, you were designated as a Central Monitoring case under ¶3(B)(3), because of your involvement in criminal activity of a sophisticated nature. On 4–29–76, you were advised of this and were provided the opportunity to respond and object to the designation if you desired. In accordance with the Policy Statement mentioned above, the institution will forward to the Central Office the information which they believe justifies your designation as a Central Monitoring case, including a summary of your objections, if any. The Central Office will then notify the institution and you of its decision as to whether or not you should be (see attached page)

24 May 1976
DATE

/s/ Paul T. Walker
SIGNATURE OF REGIONAL DIRECTOR

classified as a Central Monitoring case. If you are dissatisfied with the Central Office's decision, you may appeal directly to the Central Office through the Administrative Remedy procedures without appealing through the institution and Regional levels. The new policy statement provides you with the opportunity you request to review the Classification and to present any objections.

APPENDIX C

BP-DIR-11
REV. 10-74

## FEDERAL BUREAU OF PRISONS

## CENTRAL OFFICE APPEAL

### RESPONSE FOR ADMINISTRATIVE REMEDY REQUEST

To: Assistant Director, General Counsel and Review

From: Milano, Peter J. (LAST NAME, FIRST, MIDDLE INITIAL) — 18137–148 (REG. NO.) — Terminal Island (INSTITUTION)

*** Part A—REASON FOR APPEAL:**

In accordance with paragraph (4) of Policy Statement 7900.53 dated 4–7–76, I object to my designation with in the Central Monitoring System based upon the "Record of Sophisticated Criminal Activity" because:

1). No official investigative information has been disclosed to me indicating that *I have ever been involved in such activities; and*

2). The basis of the designation is not true or accurate.

Inasmuch as this designation based upon inaccurate information has resulted in negative responses by the Central Office to various requests made by me to re-establish family ties, please remove this designation or allow me to defend myself against the "allegations" contained in the "official investigative" information.

DATE May 6, 1976

/s/ Peter J. Milano
SIGNATURE OF REQUESTOR

* THE COMPLETED FORMS NO. BP-DIR-9 AND BP-DIR-10 MUST ACCOMPANY THIS APPEAL.

**Part B—RESPONSE**

We have reviewed your Administrative Remedy complaint and appeals in which you contest your central monitoring case designation. This designation is an administrative act governed by Policy Statement 7900.53. In the designation process confidential investigative reports were submitted by criminal justice agencies concerning you which substantially show your involvement in criminal activity of a sophisticated nature. This is supported by your conviction in United States District Court for racketeering activities. Therefore, we find the central monitoring designation in your case is appropriate, and your appeal is denied.

August 3, 1976
DATE

/s/ CLAIR A. CRIPE, General Counsel