David Jay STERLING, Plaintiff,

v.

Calvin EDWARDS, et al., Defendants.

No. 92–3020–RDR.

United States District Court,
D. Kansas.

March 3, 1995.

David Jay Sterling, Marion, IL, pro se.

D. Brad Bailey, Office of U.S. Atty., Topeka, KS, for defendants.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This matter is before the court on a civil rights claim filed by a federal inmate. Plaintiff commenced this action while housed at the United States Penitentiary, Leavenworth, Kansas, and alleges his constitutional rights were violated by a transfer and placement in disciplinary segregation without due process, placement of false information in his institutional file, destruction of legal materials, and a transfer under unduly dangerous conditions in retaliation for grievances and legal activity.

Defendants have filed a motion to dismiss, or in the alternative, for summary judgment (Doc. 55), and plaintiff has filed a response (Doc. 59). Having examined the record, the court makes the following findings and order.

## Factual Background

Plaintiff is serving a 105 year aggregate federal term and is currently housed at the United States Penitentiary, Marion, Illinois. Plaintiff's criminal history includes several factors which present management concerns, and he has been housed in a number of facilities. He is considered a verified protection case by the federal Bureau of Prisons, requiring special review of his placement to assure his safety.

Plaintiff entered the United States Penitentiary, Lompoc ("Lompoc") in February 1987 to serve his federal sentence. In August 1989, he was transferred to a North Dakota state facility due to security needs. On June 22, 1990, plaintiff was returned to the United States Penitentiary, Leavenworth, Kansas ("USPL") and assigned to administrative segregation. He remained in segregation until designated to a Minnesota state institution in March 1991. In September 1991, Minnesota officials sought to return plaintiff to federal custody, and he arrived at USPL on September 25, 1991. In April 1992, he was transferred to the United States Penitentiary, Terre Haute, Indiana, and in February 1993, he was transferred to the United States Penitentiary, Marion, Illinois. Other relevant facts are discussed in the court's analysis of plaintiff's claims.

## Discussion

Summary judgment is appropriate only when the evidence, construed in the light most favorable to the nonmoving party, shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Maughan v. SW Servicing, Inc.,* 758 F.2d 1381, 1387 (10th Cir.1985). The moving party has the burden of showing the absence of a genuine issue of material fact, and this burden "may be discharged by 'showing'— that is, pointing out to the district court— that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but

must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The nonmoving party may not rest upon mere conclusory allegations or denials. Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue for trial. *Abercrombie v. City of Catoosa, Okla.,* 896 F.2d 1228, 1230 (10th Cir.1990).

### Transfer and placement in segregation

Plaintiff first claims he was denied due process during his transfer to USPL, placement in administrative segregation, and custody classification. Plaintiff contends the transfer was disciplinary.

██ The Bureau of Prisons, pursuant to 18 U.S.C. § 3621(b), may direct an inmate's placement in any available correctional facility and may transfer the inmate between facilities at any time. Prisoners have no constitutional entitlement to placement in a particular facility. *See Olim v. Wakinekona,* 461 U.S. 238, 244–48, 103 S.Ct. 1741, 1744–47, 75 L.Ed.2d 813 (1983) (interstate transfer of state inmate); *Meachum v. Fano,* 427 U.S. 215, 225–28, 96 S.Ct. 2532, 2538–40, 49 L.Ed.2d 451 (1976) (intrastate transfer of state inmate).

Plaintiff was placed in a North Dakota facility pursuant to a contractual relationship between that state and federal authorities, *see* 18 U.S.C. § 4002, and the transfer returning plaintiff to USPL was initiated at the request of North Dakota authorities. (Doc. 56, Ex. F.) The transfer was within the discretion of North Dakota officials, who had no obligation to retain plaintiff as a federal boarder, and was not a disciplinary transfer which implicated due process interests.

██ The record does not support plaintiff's claim he was placed in disciplinary segregation, and the decision to house plaintiff in administrative segregation is clearly reasonable due to his history in custody.[1] Finally, to the extent plaintiff alleges his constitutional rights have been violated by his custody classification, he is entitled to no relief. An inmate has no constitutional entitlement to a particular custody classification, and unless the action is arbitrary and capricious, the decision of prison authorities will be upheld. *Marchesani v. McCune,* 531 F.2d 459 (10th Cir.), *cert. denied,* 429 U.S. 846, 97 S.Ct. 127, 50 L.Ed.2d 117 (1976). The record, which details plaintiff's criminal and institutional history, amply supports the classification decision, as it reflects a lengthy sentence, crimes of violence, and an escape from custody in 1985 and an attempted escape in 1986.

### Access to the courts

Plaintiff also claims he has been denied access to the courts by the intentional destruction of some of his legal materials. He alleges this occurred in retaliation for his filing of grievances. An internal investigation of the loss of plaintiff's legal papers in response to a tort claim filed by plaintiff showed that several papers plaintiff gave to prison officials for copying were not returned and could not be located. (Doc. 56, Ex. D.)

██ It is long-settled that an indigent prison inmate has constitutional right of access to the courts. *See, e.g., Bounds v. Smith,* 430 U.S. 817, 821–22, 97 S.Ct. 1491, 1494–95, 52 L.Ed.2d 72 (1977). Although the *Bounds* decision states the right of access requires prison officials to assure inmates have the means to prepare and file meaningful legal pleadings, the right of access has not been interpreted "further than protecting the ability of an inmate to prepare a petition or complaint." *Wolff v. McDonnell,* 418 U.S. 539, 576, 94 S.Ct. 2963, 2984, 41 L.Ed.2d 935 (1974). In evaluating a claim of denial of access, a court's inquiry does not end with a finding that an inmate suffered the loss of some legal materials, or was denied access to the prison law library or assistance from those trained in the law. Rather, some showing of prejudice is required. *See Green v. Johnson,* 977 F.2d 1383, 1390 (10th Cir. 1992), *citing Twyman v. Crisp,* 584 F.2d 352, 357 (10th Cir.1978).

---

1. The nature of the factors necessitating administrative segregation is set forth in material submitted to the court *in camera* and will not be discussed in detail.

■ Here, it seems apparent some legal papers given by plaintiff for photocopying were not returned. However, plaintiff has made only a conclusory claim the loss of these papers was intentional or retaliatory, and he has not shown any prejudice as a result beyond a statement the papers contained inmate statements which are irreplaceable. Because there is no evidence to suggest the loss or destruction was deliberate and because plaintiff has not identified any prejudice from the loss, the court concludes plaintiff is not entitled to relief on this claim.

*False information in prison file*

Plaintiff next contends defendants have included false information in his institutional central file to increase his custody level in retaliation for his legal activities. The information in question concerns plaintiff's suspected involvement in planning an escape from the North Dakota state prison where he was housed. Although it appears North Dakota officials received this information through a confidential source (Doc. 56, Ex. F.), no disciplinary proceedings on this matter were initiated by either state or federal authorities, and plaintiff cannot be penalized.

Plaintiff filed an administrative grievance concerning this claim and was granted relief. (Doc. 56, Ex. A.) As a result, his institutional file was edited to delete references to this topic. Moreover, while plaintiff believes this information has been improperly considered to elevate his custody classification, the court remains convinced plaintiff's criminal history and institutional record create a sufficient basis for his high custody level. The court therefore agrees this claim is moot and finds plaintiff is entitled to no further relief.

*Exposure to unreasonable threat during transfer*

Plaintiff alleges during his transfer to Minnesota he was transferred with Raphael Borgos, an inmate from whom he is a separatee and that this transfer violated his constitutional rights to due process and freedom from cruel and unusual punishment. According to plaintiff, inmate Borgos has ties to Oregon and therefore should not have been permitted to travel with him. Defendants do not appear to deny the transfer occurred as described by plaintiff, but they assert inmate Borgos was not identified by the Bureau of Prisons as a separatee (Doc. 56, Ex. 2.), and that his transfer with plaintiff thus was proper.

■ Clearly, prison officials have a duty under the Eighth Amendment to protect inmates from harm by investigating allegations of violence or threats of violence, and by exercising ordinary diligence to protect prisoners from other inmates. *Farmer v. Brennan,* ―― U.S. ――, ――, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994). "[T]he failure to protect inmates from attacks by other inmates may rise to an Eighth Amendment violation if the prison officials' conduct amounts to an obdurate and wanton disregard for the inmate's safety." *Northington v. Jackson,* 973 F.2d 1518, 1525 (10th Cir. 1992).

■ Where, as here, the claim of a failure to protect from threatened harm arises from the conditions of the inmate's confinement, a court must evaluate whether officials acted with deliberate indifference. *Whitley v. Albers,* 475 U.S. 312, 319–20, 106 S.Ct. 1078, 1084–85, 89 L.Ed.2d 251 (1986). The deliberate indifference standard has most recently been interpreted to provide that "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer,* ―― U.S. at ――, 114 S.Ct. at 1984.

■ In this case, the record does not suggest deliberate indifference to plaintiff's safety. Inmate Borgos was not a separatee of plaintiff, and there is no evidence he presented a threat to plaintiff under the circumstances of the transfer, or that defendants failed to take reasonable measures to protect plaintiff during the transfer.

*Conclusion*

Having examined the entire record, the court is convinced plaintiff is entitled to no relief in this matter. There is insufficient

evidence to present a triable issue of fact on plaintiff's claims of constitutional violations, and the court finds no evidence of malfeasance or deliberate indifference on the part of defendant officials.

IT IS THEREFORE ORDERED defendants' motion for summary judgment is granted. This matter is hereby dismissed and all relief is denied.

