Ronald COPPOLA

v.

UNITED STATES ATTORNEY GENERAL et al.

Civ. No. B–77–67.

United States District Court, D. Connecticut.

June 6, 1977.

---

Ronald Coppola, pro se.

Frank H. Santoro, Asst. U. S. Atty., New Haven, Conn., for respondents.

## MEMORANDUM OF DECISION

NEWMAN, District Judge.

Petitioner, incarcerated at F.C.I., Danbury, seeks a writ of habeas corpus to contest his classification as a Central Monitoring Case and the denial of his application for a furlough. He first received notice of his Central Monitoring Case classification in April of 1976, when he was incarcerated at the Federal Penitentiary at Lewisburg, Pennsylvania. Then on January 15, 1977, after his transfer to Danbury, he received another notice of his classification. The reason given in both notices was that he had been placed in Category B–3 of Bureau of Prisons Policy Statement 7900.53 (April 7, 1976). Category B covers "Offenders who by reason of their offense, criminal record, institutional behavior, or notoriety require especially close supervision." Subcategory 3 within Category B includes:

Offenders who have received unusual publicity because of the nature of the crime, arrest, trial, prisoner status, or record of involvement in criminal activity of a sophisticated nature or whose presence in the community or in minimum security institutions might depreciate the seriousness of the offense or promote disrespect for the law.

A third notification received by petitioner and signed by Roy Gerard, Assistant Director, Correctional Programs Division, gives the following reason for the classification:

You have been involved in criminal activity of a sophisticated nature, and your presence in the community or in minimum security institutions might depreciate the seriousness of the offense or promote disrespect for the law.

The predecessor of the Central Monitoring Case classification was the "Special Offender" or "Special Case" designation. The procedures formerly followed by the Bureau of Prisons in designating inmates as Special Offenders were found to be unconstitutional in *Catalano v. United States,* 383 F.Supp. 346 (D.Conn.1974), and *Cardaropoli v. Norton,* 523 F.2d 990 (2d Cir. 1975).[1] Subsequent to these decisions, which set forth "minimum requirements of due process" to be followed by the Bureau of Prisons in designating Special Offenders, the Bureau completely revamped its system by promulgating Policy Statement 7900.53 (April 7, 1976) on the Central Inmate Monitoring System. Under the new system an inmate is to receive notice that he is to be designated a Central Monitoring Case, and advised of the reasons. Then he is given an opportunity to present information to contest the designation. He may submit written information or may present his objection orally to a designated prison official. The information justifying the designation and a summary of the inmate's objections together with a copy of all written information submitted by him are forwarded to the Central Office for decision. The inmate may then appeal directly to the General Counsel in the Central Office through the

---

1. *See also Holmes v. United States Board of Parole,* 541 F.2d 1243 (7th Cir. 1976); *but see* *Marchesani v. McCune,* 531 F.2d 459 (10th Cir. 1976).

administrative remedy process, without first appealing through the institutional and regional levels.

 These new procedures, while a significant improvement over the former practice, which frequently left the inmate unaware of his status and unable to contest it, are substantially less favorable to the inmate than the steps ordered in *Catalano* and described as "minimum" by the Court of Appeals in *Cardaropoli.* But petitioner can raise these challenges only if he can show both that he has exhausted his administrative remedies, *Kochie v. Norton,* 343 F.Supp. 956 (D.Conn.1972), and that he has suffered injury from the allegedly improper classification.

 The Government asserts that petitioner has not exhausted his administrative remedies because he failed to appeal his classification to the General Counsel. Petitioner, on the other hand, claims that he did exhaust administrative remedies by requesting a hearing on his classification some months ago. He argues that the failure of the Bureau to respond to his request for a hearing should be deemed a denial of his administrative remedy request. To some extent this disagreement between petitioner and respondents over whether he followed the proper administrative procedures is a credibility dispute over whether he filed a particular paper that could be resolved by hearing, but more importantly it raises the issue of whether under the circumstances of this case the exhaustion of remedies doctrine requires petitioner to take the step the Government claims he omitted. Even if he in fact failed to take an appeal to the General Counsel, this omission is not fatal to his constitutional claim, for what he is challenging is the constitutionality of the very procedure the Government would make him go through. Of course, his ultimate goal is to have the Central Monitoring Case classification ex-

punged, and perhaps an administrative appeal to the General Counsel would accomplish that purpose, but he insists upon his right to be classified through a procedure that comports with the minimum requirements of due process. Significantly, the Court of Appeals dealt with this very point in its opinion in *Cardaropoli,* 523 F.2d at 997:

> It is urged by the Government that notice to the inmate of his classification as a Special Offender, in conjunction with the administrative remedy procedures provided by Bureau of Prisons Policy Statement 2001.6A (October 18, 1974), amply satisfies any process which may be due. We do not agree. Repeated efforts by Cardaropoli and Masiello to have their Special Offender designations removed through administrative channels proved unsuccessful, despite the factual errors noted above. Clearly the inmate's contribution to an informed and accurate fact-finding process will be more profitably utilized by the hearing officer before, and not after, the classification decision has been made.

The opinions in *Catalano* and *Cardaropoli* did not intimate that only those inmates who first exhausted the procedures held to be constitutionally inadequate could claim the benefit of the constitutionally required procedures. If petitioner's constitutional claim is sound and if the relief he requests is compelled by the Court of Appeals' decision in *Cardaropoli,* it would subvert the Court's holding to require him to exhaust some inferior process before affording him the process the Court held was constitutionally mandated.

 There remains the preliminary question of whether the petitioner has sufficiently alleged injury flowing from the Central Monitoring Case classification to confer upon him standing to challenge the procedures by which he was classified.[2]

---

2. In several cases in this District decided since the changes in the Policy Statement, the Court has found the injury requirement not met. *Diaz v. Director, United States Bureau of Prisons,* Civil No. B–76–283 (Nov. 18, 1976); *Reed*

*v. Wilkinson,* Civil No. B–76–280 (Mar. 4, 1977). However, these cases involved central monitoring for "separation" purposes, that is, where the Bureau for security reasons wishes to insure that an inmate is not transferred to an

Here the Government argues that petitioner's only claim of injury is that he was denied a furlough, to which he had no entitlement in any event. In *Catalano* Judge Zampano held that the classification of an inmate as a "Special Offender" resulted in "dire consequences" constituting "grievous loss" to the inmate, 383 F.Supp. at 350, 351, and the Court of Appeals affirmed this holding. The Court rejected the argument made on behalf of the Government here, stating that the contention that a prisoner has no entitlement to a prison benefit must fail as an attempt "to resurrect the now-discredited right-privilege dichotomy as an analytical approach to due process." 523 F.2d at 995 n. 11. The Court further disposed of the claim also made in this case that the denial of the furlough stemmed not from the existence of the classification, but from the facts underlying the classification:

> Putting the question begged to one side, this contention merely reinforces the need to insure that those underlying facts be determined with scrupulous accuracy
> . . .

*Id.* The threshold requirements are therefore satisfied.

Petitioner's constitutional claim may be simply stated: do the procedures of Policy Statement 7900.53 (April 7, 1976) satisfy the requirements of due process, even though they deviate from the standards set down in *Catalano* and *Cardaropoli*?

■ The deviations are substantial. *Catalano* and *Cardaropoli* require the Bureau to give the inmate at least ten days' written notice when a classification is contemplated, together with the reason or reasons for the proposed designation and a brief description of the evidence to be relied upon. The new policy statement provides for written notice with reasons, but makes no provision for a description of evidence. In petitioner's case the memorandum of notice gave the following "reasons:"

institution where the presence of a co-defendant, adverse witness, or other hostile inmate could create a dangerous condition. Prejudice to the inmate increases significantly where the

Offenders who by reason of their offense, criminal record, institutional behavior, or notoriety require especially close supervision. Offenders who have received unusual publicity because of the nature of the crime, arrest, trial, prisoner status, or record of involvement in criminal activity of a sophisticated nature or whose presence in the community or in minimum security institutions might depreciate the seriousness of the offense or promote disrespect for the law.

Petitioner justifiably complains that this memorandum did not give him meaningful notice of the charges against him to enable him to prepare his objections. He attempted to obtain a more particularized statement of what he was charged with, but he received no response. The purpose of notice is to "provide the inmate with an opportunity to marshall the facts in his defense." *Cardaropoli v. Norton,* 523 F.2d at 997–998. This memorandum was insufficient to serve that purpose and therefore fell short of due process standards.

■ *Catalano* and *Cardaropoli* require that an inmate be afforded a personal appearance before a disinterested decision-maker and permitted to call witnesses and present documentary evidence; and he is to be fully informed at the hearing of the evidence against him. The purpose of the hearing is to enable the inmate to contribute to an "informed and accurate fact-finding process." *Cardaropoli v. Norton,* 523 F.2d at 997. The procedure set up by the new policy statement does not include a hearing. Rather the information for and against the proposed designation is collected and sent to the Central Office in Washington where the ultimate decision is made. Neither the prisoner nor any witnesses he may wish to call on his behalf may be heard in person: they must submit their statements in written form. Further, in petitioner's case, the circumventing of the hearing step has resulted in leaving the prisoner completely unaware of the evidence the Bu-

effect of his classification is not separation, but rather an alleged curtailment of his eligibility for community programs such as furloughs.

reau has against him. Even if the notice had sufficiently informed him of the charge against him to enable him to prepare an objection, he might never know whether his written submission was responsive to the actual evidence against him, since he has remained at all times completely in the dark as to what that evidence is. A hearing brings the issues into the open, so that a prisoner can respond meaningfully instead of guessing at what he should include in his written submission.

 Finally, *Catalano* and *Cardaropoli* require the hearing officer to support his decision with written findings of "at least minimal specificity." The statement of reasons by the decision-maker facilitates review, protects the inmate against arbitrary or improper decisions, "promotes thought by the decider," and lessens inmate resentment. 523 F.2d at 998. In petitioner's case he was told:

> You have been involved in criminal activity of a sophisticated nature, and your presence in the community or in minimum security institutions might depreciate the seriousness of the offense or promote disrespect for the law.

Under some circumstances this statement of reasons might be adequate, but in petitioner's case, particularly since petitioner was never given notice of specific charges or told of the evidence, it falls short of what due process requires. The ambiguous phrasing leaves open the possibility that the decision-maker considered evidence of criminal activity that petitioner had never had an opportunity to contest. *Cf. Marchesani v. McCune,* 531 F.2d 459, 461 (10th Cir. 1976) ("special offender" classification based only on nature of crimes for which prisoner had been *convicted*); *Brown v. Lundgren,* 528 F.2d 1050 (5th Cir. 1976) (prisoner had opportunity to contest aggravating circumstances considered in denying him parole). At a minimum the petitioner and the reviewing authority should know whether the decision-maker considered information outside the fact of petitioner's conviction, for if petitioner never had a chance to contest that information, due process standards have not been met.

Whatever flexibility the Bureau has in formulating its classification procedures is in providing greater, not lesser, protections than those mandated in *Cardaropoli.* The Court of Appeals stated that its opinion would not limit the Bureau in devising more generous safeguards, but it repeatedly characterized the procedures it outlined as "minimum." 523 F.2d at 996, 997, 997 n. 17.

 Accordingly, it is ORDERED that a writ of habeas corpus will issue discharging the petitioner unless within thirty days the Central Monitoring Case classification is expunged. Unless the Bureau follows the *Catalano*-*Cardaropoli* procedures, the classification may not be reimposed.

The request for a furlough is denied, without prejudice to its resubmission after exhaustion of administrative remedies. In ruling on petitioner's request for a furlough, the Bureau may not rely on the invalid Central Monitoring Case classification.