**William BECKER, Plaintiff,**

v.

**William French SMITH, Attorney General of the United States; Norman A. Carlson, Director, U.S. Bureau of Prison; and George Wilkinson, Warden, U.S. Penitentiary, Lewisburg, Defendants.**

Civ. A. No. 82–174.

United States District Court,
M.D. Pennsylvania.

Dec. 21, 1982.

William Becker, pro se.

Albert R. Murray, Asst. U.S. Atty., Scranton, Pa., for defendants.

## MEMORANDUM

HERMAN, District Judge.

Plaintiff, William Becker, is an inmate incarcerated in the United States Penitentiary, Lewisburg, Pennsylvania. Plaintiff is currently serving an aggregated thirty-year sentence for the offenses of Interstate Transportation of Stolen Motor Vehicles; Conspiracy to Escape; Aiding and Assisting an Escape; Escape; Counterfeit Obligations and Securities; and Aiding and Abetting.

In 1977, the Federal Prison System (FPS) classified Plaintiff as a Central Monitoring Case (CMC), pursuant to Bureau of Prison Policy Statement 5180.2. The classification was made to ensure that Plaintiff would be separated from other federal offenders who had provided information to the federal authorities which led to Plaintiff's indictment and conviction. An FPS official notified Plaintiff that he had been so classified, to which Plaintiff apparently did not object.

On September 21, 1981, however, Plaintiff sought to have his CMC status removed, contending that all separatees had been released from federal custody. In a response dated October 7, 1981, Plaintiff was informed that removal or modification of his CMC status was not warranted. Specifically, the response stated that it was possible for a separatee to return with a new conviction or a parole violation. Plaintiff appealed under the Administrative Remedy procedure on October 22, 1981. The Regional Director affirmed the FPS' decision on December 3, 1981, noting that "[a]ny future transfer, temporary releases, or participation in community-based activities will not be precluded as a result of your CIM [Central Inmate Monitoring System] classification."

Plaintiff therefore brought this action on June 18, 1982, alleging that no co-defendants are incarcerated in the federal system at this time and that Plaintiff is improperly classified. Plaintiff contends that this improper classification and Defendants' refusal to grant him a hearing is a violation of his due process right. Plaintiff claims that the CMC classification affects his participation in furloughs, transfers, and community activities.

The action subsequently was referred to a Magistrate, the Honorable Raymond J. Durkin, who permitted Plaintiff to proceed in forma pauperis and ordered process issued on February 18, 1982. Defendants filed no response until May 13, 1982, at which time Defendant moved for a thirty-day extension of time to respond. Although Plaintiff was aware that Defendants could be held in default for their delay, Plaintiff raised no objections and decided not to pursue that avenue of action. (Letter dated May 20, 1982, Docket entry 7). Consequently, the Magistrate granted Defendants' motion for an extension "until on or about June 13, 1982." (Docket entry 6). Upon Defendants' failure to file a response by June 13, 1982, Plaintiff, on June 15, 1982, requested the clerk's office to enter a default in favor of Plaintiff and against Defendant. Pursuant to Rule 55(a), the clerk entered Defendants' default on June 16, 1982.

On June 18, 1982, Defendants' filed a motion to dismiss, or in the alternative, a motion for summary judgment. On June 24, 1982, Defendants filed a motion to set aside the default entered on June 16, 1982. Neither Defendants nor Plaintiff filed a brief concerning the motion to set aside the default. Nor did Plaintiff file an opposing brief to Defendants' alternative motions to dismiss or to grant summary judgment.

On August 31, 1982, the Magistrate granted Defendants' motion to set aside the notice of entry of default. The Magistrate further granted Plaintiff an extension of fifteen days to file an opposing brief to Defendants' motions to dismiss or grant summary judgment. On September 17, 1982, Plaintiff filed his opposing brief, in addition to objecting to the Magistrate's lifting of the default entry.

Thereafter, on October 18, 1982, the Magistrate issued a Report and Recommendation that Defendants' motion for summary judgment be granted. The Magistrate found that Plaintiff was not entitled to due process protection in avoiding CMC classification and, in any event, Plaintiff was not entitled to relief in light of the facts of this action. Plaintiff filed exceptions to the Magistrate's Report on October 25, 1982, again claiming the Magistrate erred in lifting the default. Moreover, we interpret Plaintiff's exceptions to allege that facts do exist which entitle Plaintiff to relief. Neither party filed briefs concerning these exceptions.

As we view the record, three issues must be addressed: (1) Did the Magistrate err in lifting the prior entry of default in favor of Plaintiff? (2) Does a federal prisoner's interest in avoiding classification as a CMC entitle him to due process protection? (3) Does Plaintiff allege facts which would entitle him to relief in this action?

First, we find no error in the Magistrate's lifting of the notice of default. As the Magistrate concluded, the default entered by the clerk pursuant to Rule 55(a) of the Federal Rules of Civil Procedure was an entry of default, and not judgment of default as provided by Rule 55(b).

Rule 55(c) permits the court to set aside an entry of default for good cause. In this action, because Plaintiff did not object to Defendants' initial delay, Defendants had until "about June 13, 1982" to file a response to Plaintiff's claim. Defendants filed motions to dismiss or to grant summary judgment on June 18, 1982. While Defendant was five days late in responding, the period of delay was not great. Moreover, Defendants did not receive the documents they needed to support their response, which were the basis for the original thirty-day extension, until June 17, 1982. Defendants promptly filed a response the following day upon receipt of these documents. Plaintiff has neither alleged or actually suffered any prejudice because of the delay; therefore, the Magistrate acted properly in lifting the notice of default.

Next, we address the question whether a federal prisoner's interest in avoiding classification as a CMC entitles the prisoner to due process protection. The Third Circuit has not yet spoken on this question, and our review of the case law on this point established that the area remains very unsettled. *See, e.g., Pugliese v. Nelson,* 617 F.2d 916 (2d Cir.1980) (classification as a CMC prisoner does not entitle a prisoner to due process protections); *Coppola v. United States Attorney General,* 455 F.Supp. 15 (D.Conn. 1977) (injury flowing from CMC classification requires due process protection of meaningful notice and an opportunity for a hearing); *Milano v. Jett,* 424 F.Supp. 1208, 1213 (C.D.Cal.1976) (prisoner's designation as CMC because of record of "sophisticated criminal activity" found consistent with prisoner's rights to due process). Indeed, the Middle District of Pennsylvania is divided. *Compare Martinez v. Carlson,* et al., No. 80–0498 (M.D.Pa., filed March 25, 1981) (adopting reasoning of Second Circuit and finding no right of due process protection from CMC classification) *with Bryant v. Carlson,* 489 F.Supp. 1075 (M.D.Pa.1979) (holding that Due Process Clause protects prisoner receiving CMC status).

The objective of the Central Inmate Monitoring System (CIM) and its classification of certain prisoners as CMC is not to punish or deprive prisoners of their liberty interest. Rather, the stated goal is to coordinate management of special cases that have unusual or extreme circumstances to be considered. (*See* Bureau Policy 5180.2, Exhibit C of Defendants' brief in support of motion to dismiss). Prisoners are monitored, not to preclude them from transfers, temporary releases, or participation in community activities, but "to provide protection for all concerned and to contribute to the safe and orderly running of Federal Institutions." *Id.*

Placement of prisoners in various facilities or programs is monitored for a variety of special reasons, including for the security of witnesses, to supervise prisoners convicted of sophisticated criminal activity, to monitor inmates involved in high publicity cases, and to separate inmates where one inmate has provided authorities with information concerning illegal activities of another inmate. The CIM classification system provides guidelines for CMC determination, for constant review of CMC status, and for an Administrative Remedy Procedure for reviews and appeals from CMC classifications. The system also requires written notice of CMC classification to be given to an inmate, in addition to the reasons for that classification. *Id.*

 While the *Bryant* opinion provides a logical analysis and discussion on why CMC classification affects a liberty interest protectible by due process considerations, we must concur with the *Martinez* court that the Second Circuit's reasoning in *Pugliese v. Nelson,* 617 F.2d 916 (2d Cir.1980), is more persuasive. In *Pugliese,* the court began its discussion of this due process question with the recognition that the Fifth Amendment provides that no person may be deprived by the government of "liberty" without due process of law. *Id.* at 921. To qualify as a constitutionally protected liberty interest, the prisoner's interest must be assured by statute, judicial decree, or regulation. *Wolff v. McDonnell,* 418 U.S. 539,

94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Hence, while a prisoner retains some portion of his constitutionally protected liberty, not all deprivations imposed by prison authorities activate the procedural protections of the Due Process Clause.

The *Pugliese* court expounded upon a number of cases that had discussed whether various interests were constitutionally protected liberty interests. *See Pugliese,* 617 F.2d at 922–23. *See also and compare Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) (prisoner's "good times" credits, which affect parole eligibility, create a liberty interest protected by due process); *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (promise of parole revocation only upon a demonstration of good cause is a constitutionally valuable liberty interest), *with Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979) (prisoner's mere hope of possibility of freedom on parole is insufficient to be a protected liberty interest); *Moody v. Daggett,* 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976) (filed detainer for parole violation held not to entitle prisoner to immediate hearing under Due Process Clause); *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) (prisoner's interest in not being transferred to a prison with less favorable living conditions is not a constitutionally protected liberty interest). The court concluded that "a prisoner's mere expectation of benefits associated with non-CMC status does not amount to a statutory or constitutional entitlement sufficient to trigger due process protections." *Pugliese,* 617 F.2d at 925. The court held:

It may be true ... that a CMC designation in practice delays or precludes a prisoner from being favorably considered for furloughs, transfers, work releases, participation in community activities and even early parole, but the fact remains that these freedoms are mere possibilities, like an unclassified prisoner's prospect of

release on parole, with no prisoner (CMC or not) able to prove any state of facts which would entitle him to these freedoms. Non-CMC status, in other words, merely gives a prisoner a greater chance of enjoying these freedoms, it does not guarantee them. Nor does CMC status totally foreclose the enjoyment of the benefits since the Central Monitoring Case Coordinator may grant the benefits to a CMC prisoner.

*Pugliese,* 617 F.2d 923–24 (footnotes deleted).

Additionally, the United States Supreme Court has stated, in dicta, that while prisoner classification and eligibility for rehabilitative programs in the federal system may cause a "grievous loss" upon an inmate, no due process protections are created. *Moody v. Daggett,* 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 279 n. 9, 50 L.Ed.2d 236 (1976). "Congress has given federal prison officials full discretion to control these conditions of confinement, 18 U.S.C. § 4081 [18 USCS § 4081], and petitioner has no legitimate statutory or constitutional entitlement sufficient to invoke due process." *Id.* As aptly discussed in *Pugliese,* Bureau Policy Statement 5180.2 does not limit the Attorney General's discretion to grant or deny benefits of furloughs, transfers, work releases, and participation in community programs. "The most that can be said is that the Policy Statement established procedures to be followed by the various divisions of the Bureau of Prisons in exercising its discretion with respect to prisoner designation, monitoring and control." *Pugliese,* 617 F.2d at 924. Additionally, monitoring and controlling prisoners is an area better left to the expertise of prison administration authorities. The federal courts should not be involved in prisoner classification, and hence, the day-to-day operations of the prison system. *Id.*

■ Having found no protectible liberty interest to exist that entitles Plaintiff to due process protections when being classified as a CMC, we concur with the Magis-

trate that Plaintiff is suffering no grievous loss which entitles him to relief. The documents submitted by Defendants on June 23, 1982, for the court's *in camera* inspection reveal that a separatee of Plaintiff's is confined within the Bureau of Prisons. Plaintiff contends that Larry L. Barnes, a paralegal specialist employed by the United States Penitentiary in Lewisburg, Pennsylvania who submitted an affidavit that a separatee of Plaintiff's was currently confined in the prison system, is lying. Plaintiff, however, does not have before him the documents which establish that a separatee does indeed exist and, thus, that Barnes is not lying. We have examined the documents in this case and are in accord with the Magistrate's reasoning that Plaintiff fails to state a cause of action which entitles him to relief.

An appropriate order will be entered.

### ORDER

AND NOW, this 21st day of December, 1982, IT IS HEREBY ORDERED that:

1. Upon our independent consideration of the documents in this action and pursuant to the opinion released this date in the above-captioned case, the Report and Recommendation of Magistrate Durkin are adopted.

2. Defendants' motion for summary judgment is granted.

3. The Clerk of the Court is directed to close the file on this matter.